[No. B164111. Second Dist., Div. Three. Aug. 12, 2004.]

MICHAEL D. WILLIAMS, Plaintiff and Appellant, v.
HOUSING AUTHORITY OF THE CITY OF LOS ANGELES, Defendant
and Respondent.

**COUNSEL**

The Aikins Law Firm and Lenton Aikins for Plaintiff and Appellant.

Stephan, Oringher, Richman & Theodora, Martha A. Shen and Efrat M. Cogan for Defendant and Respondent.

## OPINION

**CROSKEY, Acting P. J.**—In *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074 [6 Cal.Rptr.3d 457, 79 P.3d 569] (*Schifando*), the California Supreme Court determined that a city employee who claimed to have suffered employment-related discrimination was not required to exhaust both the internal administrative remedy in the city charter and the administrative remedy provided by the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.),[1] before filing a FEHA disability discrimination claim in superior court. In this case, we must resolve a question identified in *Schifando* but not addressed, that is, whether a public employee who claims employment-related discrimination, and asserts both FEHA claims and nonstatutory claims for wrongful demotion and constructive termination in violation of public policy[2] must exhaust the internal administrative remedy provided by his or her employer with respect to those nonstatutory claims before filing a civil action.[3] We conclude that *Schifando*'s exemption must also apply to FEHA-related nonstatutory claims when the resolution of those claims would have a preclusive impact on the FEHA claim. To require exhaustion of internal administrative remedies for those FEHA-related nonstatutory claims would unduly burden a public employee. A public employee would first have to successfully challenge the administrative findings in an administrative mandamus action, which might detrimentally impact the employee's right to bring a FEHA claim, and his or her right

---

[1] Unless otherwise indicated, all statutory references are to the Government Code.

[2] As noted in *Brown v. Superior Court* (1984) 37 Cal.3d 477 [208 Cal.Rptr. 724, 691 P.2d 272], "employment discrimination cases, by their very nature, involve several causes of action arising from the same set of facts. A responsible attorney handling an employment discrimination case must plead a variety of statutory, tort and contract causes of action in order to fully protect the interests of his or her client. [Fn. omitted.]" (*Id.* at p. 486.) Tort causes of action may include, for example, wrongful termination in violation of public policy based on the policy in the FEHA prohibiting discrimination, and on other public policy violations unrelated to the FEHA. Here, Williams alleges common law (or nonstatutory) tort causes of action for wrongful demotion and constructive termination in violation of public policy, which as alleged, appear to be based on his response to a civil subpoena in defiance of contrary instructions from his employer. These causes of action are *not* based on the FEHA but still might give rise to a tort cause of action. But suppose Williams had also alleged a nonstatutory claim that *was* based upon an alleged violation of the public policy set out in the FEHA. In that event, there would be a hybrid cause of action which we designate in this opinion, for sake of clarity, as a FEHA-related nonstatutory claim. Thus, as we discuss below, there are three possible types of claim that might be asserted: (1) a statutory claim under the FEHA, (2) a FEHA-related nonstatutory claim and (3) a nonstatutory claim entirely independent of the FEHA.

[3] In our resolution of this issue, we do not consider the possible applicability of governmental immunity statutes to Williams's tort causes of action for wrongful demotion and constructive termination in violation of public policy because Williams has alleged that he complied with the Tort Claims Act, and the parties have not raised the immunity issue. (Cf. *Palmer v. Regents of University of California* (2003) 107 Cal.App.4th 899, 909–910, fn. 11 [132 Cal.Rptr.2d 567].)

under *Schifando* to choose the appropriate forum to pursue that claim. In light of *Schifando*, and based on the conclusion we reach here, the trial court erred in dismissing plaintiff Michael D. Williams's (Williams) complaint alleging retaliation (§ 12940, subd. (h)) for failure to exhaust his internal administrative remedy, but did not err in dismissing Williams's nonstatutory claims because those claims are not FEHA-related.[4] Thus, as alleged, the resolution of Williams's nonstatutory claims will have no preclusive effect on his FEHA claim against his former employer, the defendant and respondent Housing Authority of the City of Los Angeles (HACLA).[5] Accordingly, Williams's claims for wrongful demotion and constructive termination in violation of public policy are barred for failure to exhaust his internal administrative remedy. Therefore, we affirm in part, and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND[6]

### 1. *Williams's Demotion and Termination*

Williams worked for HACLA as a print-shop supervisor before he was disciplined, demoted, and ultimately terminated for job abandonment.

Williams's trouble began when he received a civil subpoena on two days' notice to testify in court in an unrelated civil action. HACLA management initially told Williams to comply with the subpoena, but the afternoon before his scheduled appearance, HACLA's attorney told him not to appear in court. Williams disregarded that advice.

---

[4] Williams actually only alleged two nonstatutory claims and a single FEHA claim. He did not allege what we characterize as a FEHA-related nonstatutory claim. We nonetheless need to consider and discuss that type of claim as well in order to make clear the distinctions we describe and the exhaustion consequences that flow therefrom.

[5] HACLA is a public corporation created pursuant to the Housing Authorities Law of the Health and Safety Code (§ 34200 et seq.) that was enacted by the Legislature to qualify local housing bodies for federal loans under the United States Housing Act of 1937 (42 U.S.C. § 1401 et seq.). (*Holtzendorff v. Housing Authority of the City of Los Angeles* (1967) 250 Cal.App.2d 596, 601 [58 Cal.Rptr. 886].)

[6] Because this matter comes to us following a judgment sustaining a demurrer without leave to amend, we assume the truth of the material facts properly pleaded in Williams's second amended complaint. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We may also consider documents attached to that complaint as exhibits. (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 901, pp. 360–362.) If recitals in those documents are inconsistent with the allegations of the complaint, the recitals take precedence, and we disregard allegations inconsistent with the unambiguous text of the documents. (4 Witkin, Cal. Procedure, *supra*, Pleading, § 392, p. 489.) In addition, we may also take into account matters that may be judicially noticed. (*Four Star Electric, Inc. v. F & H Construction* (1992) 7 Cal.App.4th 1375, 1379 [10 Cal.Rptr.2d 1].)

About two weeks later, Williams received a "notice of intent to discharge" arising from, among other things, his insubordination for failure to follow HACLA's attorney's advice. Williams was not discharged. Following a *Skelly* hearing,[7] he was instead demoted to residence cleaner. Williams did not report to his new assignment and HACLA terminated his employment.

### 2. *HACLA's Grievance Procedure Permitted Williams to Challenge the Adverse Employment Decisions*

Williams had a right to challenge the adverse employment decisions that ultimately led to his termination. HACLA's internal procedure is set forth in its manual of policy and procedure. Chapter 108, section 108:0906 of the HACLA personnel rules (hereafter Section 108:0906), provides that whenever a permanent employee has been "discharged, demoted or suspended," he or she may appeal to the executive director by written notice prior to the expiration of the appeals period.[8] If the employee is dissatisfied with the executive director's decision, he or she may appeal the disciplinary action to the commission. The commission may hear the appeal, or may designate a

---

[7] The reference is to the hearing afforded public employees as set forth in *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 215 [124 Cal.Rptr. 14, 539 P.2d 774].

[8] Section 108:0906 provides: "APPEAL PROCEDURES. Whenever a permanent employee has been discharged, demoted or suspended without pay for five (5) or more work days, such employee may appeal according to the following procedure: [¶] (a) Within ten (10) work days after service upon the employee of the Final Notice (15 days if service is by mail), the employee may appeal the disciplinary action to the Executive Director. [¶] (b) Every appeal shall be taken by way of written Notice of Appeal filed with the Executive Director prior to the expiration of the appeal period. [¶] (c) An appeal shall contain a notice of the employee's intent to appeal, setting forth specific facts upon which the appeal is based, a specific reference to the disciplinary action from which the appeal is taken and the nature of the relief sought. Every Notice of Appeal shall be signed by the appellant or a designated representative. [¶] (d) Within ten (10) work days after receipt of the Notice of Appeal, the Executive Director shall either appoint a Hearing Officer to conduct a formal hearing on the appeal or schedule a hearing at which the Executive Director will act as the Hearing Officer. [¶] (e) At this hearing, the employee may present documentary evidence, testimony, and witnesses. [¶] (f) Within twenty (20) work days after the hearing, the Hearing Officer or Executive Director shall render a decision. The Hearing Officer's decision shall be advisory to the Executive Director. [¶] (g) If the employee is not satisfied with this decision, the employee may appeal the disciplinary action to the Commission. [¶] (h) This appeal shall be taken by way of written Notice of Appeal filed with the Commission within ten (10) work days of receipt of the Executive Director's/Hearing Officer's decision. [¶] (i) An appeal shall contain a notice of the employee's intent to appeal, setting forth specific facts upon which the appeal is based, a specific reference to the disciplinary action from which the appeal is taken and the nature of the relief sought. Every Notice of Appeal shall be signed by the appellant or a designated representative. [¶] (j) The Commission may hear the appeal or designate a Hearing Officer from an independent agency to conduct the hearing on the appeal. [¶] (k) The Commission or the Hearing Officer shall hear the matter and shall render a written decision after the conclusion of the hearing. [¶] (l) If the decision is rendered by the Hearing Officer, it shall be advisory to the Commission. The Commission shall review the advisory recommendation of the Hearing Officer and render a decision. [¶] (m) The decision of the Commission shall be final and binding."

hearing officer in its place. If a hearing officer is designated, that decision is an advisory recommendation to the commission. The commission's decision is final.

### 3. *Williams Initially Invoked HACLA's Internal Administrative Remedy but Abandoned the Process and Filed a Civil Action*

After receiving his supervisor's intent to discharge him for insubordination, Williams responded and requested reinstatement. Rather than reinstatement, Williams was demoted. Williams appealed that decision to the commission. But Williams then abandoned his appeal.

Because Williams did not report to his new assignment, he received a second notice of discharge for, among other things, unexcused absences and job abandonment (hereafter, second notice). This second notice also informed Williams that he had a right to appeal the decision. In a footnote, the second notice stated: "Please note that your demotion, and the grounds for your demotion, are not an issue in this case. The simple basis for my decision to terminate your employment is that you have refused to report for work. Indeed, even if your demotion is overturned, my decision to terminate your employment will not be impacted."

### 4. *HACLA Challenged Williams's Civil Action Because He Failed to Exhaust His Internal Administrative Remedies*

Following his termination, Williams filed suit alleging wrongful demotion in violation of public policy, constructive termination in violation of public policy, and retaliation in violation of the FEHA. Williams's claims are based upon HACLA's actions allegedly taken as a result of Williams's response to the subpoena.[9]

Williams's successive complaints alleged that he complied with the Tort Claims Act, and that he had exhausted his administrative remedy under the FEHA, but HACLA continued to challenge his complaint because Williams did not allege that he complied with Section 108:0906, or that he was excused from complying with that section. HACLA's demurrer to the initial complaint was sustained with leave to amend.

Williams then filed a first amended complaint, but again failed to plead that he had exhausted the internal appeals of Section 108:0906. HACLA's

---

[9] Williams's complaint of discrimination filed with the Department of Fair Employment and Housing (the Department) states that he was fired, demoted, and retaliated against because he "obeyed a subpoena and appeared in court to testify / because of insubordination." Likewise in his second amended complaint, Williams's causes of action are based upon HACLA's reactions to Williams's compliance with a civil subpoena.

demurrer on the ground that Williams had failed to exhaust his internal administrative remedies again was sustained with leave to amend because, according to the trial court, Williams had failed to allege "whether he pursued the agency's appellate procedures [and] if not, why not."

In his second amended complaint, Williams alleged that he had responded to the initial charge of discipline,[10] but that he was not required to exhaust what he alleged to be the optional appeals procedure under Section 108:0906. Even if he were required to do so, Williams alleged that HACLA's second notice "specifically informed him in a written decision that *any and all applicable internal appellate procedures would be futile*."[11] (Italics in original.)

HACLA again filed a demurrer to the second amended complaint. It argued that the amendments still were insufficient to show that Williams had exhausted his internal administrative remedy because he had not alleged that he had *completed* the internal appeals process of Section 108:0906, nor had he alleged an exception to the exhaustion requirement. The trial court agreed with HACLA. It concluded that the allegations in the second amended complaint were "insufficient to plead exhaustion," and that Williams had failed to show that the second notice would have made any subsequent participation in the internal appeals process futile. The trial court sustained the demurrer without leave to amend, and entered judgment dismissing the action. Williams timely filed this appeal.

Following oral argument, our Supreme Court decided *Schifando, supra*, 31 Cal.4th 1074, in which it concluded that a public employee need not exhaust both an available internal administrative remedy and the FEHA remedy when asserting a FEHA claim, and that receiving a right-to-sue letter from the

---

[10] Williams alleged that he had exhausted Section 108:0904. That section provides: "DISCHARGE, DEMOTION, AND SUSPENSION PROCEDURE. [¶] (a) Notice of Intent. Whenever a responsible supervisor intends to suspend for five (5) days or more, demote or discharge a permanent employee, the supervisor shall notify the Personnel Department and give the employee a written Notice of Intent to Discipline which states: [¶] (1) The discipline action intended. [¶] (2) The specific charges upon which the action is based. [¶] (3) A factual summary of the grounds upon which the charges are based. [¶] (4) Notice of the employee's right to respond to the charges either orally or in writing to a responsible supervisor. [¶] (5) The employee's right to review and copy all the materials upon which the intended discipline is based. [¶] (6) The date, time and person before whom the employee may respond in no less than five (5) days. [¶] (7) Notice that failure to respond at the time specified shall constitute a waiver of the right to respond. [¶] (b) Final Notice. If, after the response or the expiration of the employee's time to respond to the Notice of Intent, the responsible supervisor decides to proceed with disciplinary action, a Final Notice shall be served upon the employee either in person or by mail and shall be effective when served."

[11] Following this allegation, Williams referenced the second notice attached as an exhibit to his complaint.

Department is a sufficient prerequisite to filing an FEHA claim in superior court. We asked the parties to submit supplemental briefs on the impact of *Schifando* to this case. We also asked the parties to further brief the issue we resolve here, namely, whether in light of *Schifando*, an employee must exhaust his or her internal administrative remedy on nonstatutory claims.[12]

## THE PARTIES' CONTENTIONS

Williams contends that, based on *Schifando, supra,* 31 Cal.4th 1074, he was not required to exhaust HACLA's internal administrative remedy to proceed with his FEHA claim as long as he complied with the FEHA exhaustion requirement. With respect to his nonstatutory claims, Williams contends that those claims should be exempt from the internal administrative exhaustion requirement based on a concept akin to supplemental or pendent jurisdiction. In his words: The "nonstatutory claims [should] ride to the courthouse on the FEHA claims." Assuming that the nonstatutory causes of action are subject to an exhaustion requirement under HACLA's personnel rules, Williams contends that (1) the administrative process is permissive, not mandatory, (2) he has alleged an exception to the exhaustion requirement, and/or (3) he should have been given leave to amend his second amended complaint to allege equitable estoppel.

HACLA acknowledges that *Schifando, supra,* 31 Cal.4th 1074, does not require that Williams also exhaust its internal administrative remedy to proceed with his FEHA claim. HACLA contends, however, that *Schifando* affirms that Williams must exhaust his internal administrative remedy on his nonstatutory claims, and asserts that a rule that would exempt those claims if they are "predominately related" to the same facts upon which a FEHA claim is based would misread *Schifando*, would contradict case law requiring exhaustion of administrative remedies, and would undermine the strong public policy in favor of exhaustion of administrative remedies.

## DISCUSSION

### 1. Standard of Review

The trial court's ruling sustaining HACLA's demurrer is reviewed de novo. (*Coopers & Lybrand v. Superior Court* (1989) 212 Cal.App.3d 524,

---

[12] We asked the parties to address our concern that by imposing a requirement that an employee must exhaust his or her internal administrative remedy on nonstatutory claims, such a rule might have the effect of barring the public employee's subsequent FEHA claim based on issue preclusion. We informed the parties that we were considering a rule that would not require an employee to exhaust his or her internal administrative remedy on nonstatutory claims that are either based on a FEHA violation, such as wrongful termination in violation of public policy, when the policy upon which the claim is based is the FEHA, or are "predominately based" on the same set of facts as the FEHA claim.

529 [260 Cal.Rptr. 713].) " 'Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action.' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) We assume the truth of the allegations in the complaint, but not contentions, deductions, or conclusions of fact or law. (*Schifando, supra*, 31 Cal.4th at p. 1081; *Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) We consider matters that may be judicially noticed, and we "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Blank v. Kirwan, supra*, at p. 318.) If the trial court has sustained the demurrer, we determine whether the complaint states facts sufficient to constitute a cause of action. Where, as here, the court sustained the demurrer without leave to amend, we must decide whether there is a reasonable probability that Williams could cure the defect with an amendment. (*Ibid.*) It is an abuse of discretion to sustain a demurrer if there is a reasonable probability that the defect can be cured by amendment. (*Ibid.*) Based on this standard, we conclude that Williams's second amended complaint does not sufficiently allege exhaustion of internal administrative remedies to proceed with his nonstatutory claims, and that Williams has not shown that he can cure this pleading defect, or that he can allege an exception to the exhaustion requirement.

### 2. *Based on Schifando, Williams Has Sufficiently Alleged That He Met the Exhaustion Requirement to Proceed with His FEHA Claim*

*Schifando, supra*, 31 Cal.4th 1074, held that a city employee did not have to exhaust a mandatory internal administrative remedy under the city charter before filing a FEHA disability discrimination claim in superior court. This rule applies here and permits Williams to proceed with his FEHA claim.

In *Schifando*, in addition to the FEHA administrative exhaustion requirements (§§ 12960, 12965, subd. (b); *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492 [59 Cal.Rptr.2d 20, 926 P.2d 1114]), an article in the City Charter of Los Angeles (city charter) directed employees who believed that they had been wrongfully suspended, laid off, or discharged to file a written claim for compensation and/or request for reinstatement within 90 days of the adverse employment action. (*Schifando, supra*, 31 Cal.4th at pp. 1082–1083.) Under the city charter, failure to file a demand for reinstatement and claim for compensation barred any subsequent action for reinstatement and was also a " 'condition precedent to any recovery of wages or salary claimed to be due on account of said lay-off, suspension or discharge.' " (*Id.* at p. 1083.) Plaintiff Steve Schifando did not comply with the demand requirement under the city charter before filing suit for disability discrimination in violation of the FEHA. (*Id.* at pp. 1080–1081.) The *Schifando* court held that he was not required to do so.

*Schifando* court reasoned that requiring city employees to pursue remedies under both the city charter and the FEHA would frustrate the Legislature's intent to give public employees the same rights as private employees in the battle against employment discrimination. It noted that the city charter did not afford the same protections as the FEHA, pointing out the shortcomings in the city charter procedures as compared with the FEHA, just as the court had in *State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422, 431–434 [217 Cal.Rptr. 16, 703 P.2d 354] (*State Personnel Bd.*), when considering the shortcomings of the Civil Service Act (§ 18500 et seq.), as compared with the FEHA. (*Schifando, supra,* 31 Cal.4th at pp. 1083–1086.) Like the procedures at issue in *State Personnel Bd.*, under the city charter provisions, the city was both the party accused of wrongdoing and the investigating agency. Moreover, the city was not an independent adjudicatory body. Of particular concern to the *Schifando* court was that under the city charter, the city employee had three months to bring a claim, a substantially shorter period of time than the one year afforded FEHA complainants. (*Schifando,* at p. 1085.) Thus, according to the *Schifando* court, the city would hear and decide the matter before the Department would. Thereafter, a court reviewing a petition for writ of administrative mandamus following the city's decision would give deference to the city's findings. As the *Schifando* court noted, if the reviewing court upheld the city's administrative decision, its findings then would then be "res judicata on any claims filed after the Department issued a right to sue letter. If so, aggrieved employees would not have had the chance to develop their cases (through adequate discovery, presentation of evidence, and cross-examination, rights not guaranteed at the City's hearing) to the extent the Legislature intended [under the FEHA]." (*Ibid.*)

Citing with approval *Watson v. Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1284 [261 Cal.Rptr. 204], and *Ruiz v. Department of Corrections* (2000) 77 Cal.App.4th 891, 900 [92 Cal.Rptr.2d 139], which both held that a public employee had the option of choosing between the FEHA and the civil service remedy, the *Schifando* court found no reason to apply a different rule when considering between the FEHA and the city charter remedy. (*Schifando, supra,* 31 Cal.4th at p. 1088.) It reasoned that a city employee would "indeed tread onto a 'procedural minefield' if a claim was filed with the Department at the same time remedies were pursued under the City Charter." (*Ibid.*) While acknowledging the policy reasons behind the exhaustion requirement, the *Schifando* court nevertheless concluded: "The benefits of judicial economy, agency expertise, and potential for swift resolution of grievances are better served by a rule that allows aggrieved public employees to seek redress in the forum that is most appropriate to their situation." (*Id.* at p. 1089.) Thus, in order to provide a public employee with the same rights as a private employee, the court concluded that a city

employee had the option to choose between the available administrative remedies. (*Id.* at pp. 1088–1089.)

Although HACLA acknowledges that *Schifando* applies here, it attempts to point out greater procedural rights afforded in its administrative remedy, including the right to a hearing and the right to the presentation of evidence and cross-examination, which were not afforded under the city charter provision at issue in *Schifando*. (*Schifando, supra*, 31 Cal.4th at pp. 1082–1083.) We are not persuaded that HACLA's additional procedural rights somehow preclude the application of *Schifando*. The *Schifando* court addressed the procedures, protections, and remedies afforded under the FEHA for the purpose of showing that a public employee should have available to him or her the same tools in the battle against employment discrimination that are available to private employees. The FEHA's procedures, protections, and enforcement services go way beyond HACLA's available internal administrative remedies.

Based on *Schifando, supra*, 31 Cal.4th at page 1092, Williams had the right to choose between his internal administrative remedy and his FEHA remedy to pursue his statutory retaliation claim. Williams alleged that he timely filed a complaint with the Department. This is sufficient to plead exhaustion. Thus, the trial court erred in concluding that Williams's FEHA claim for retaliation was barred for failure to allege that he had exhausted HACLA's internal administrative remedy.

### 3. *Imposing an Exhaustion Requirement on FEHA-Related Nonstatutory Claims Will Vitiate Schifando*

*Schifando*, supra, 31 Cal.4th 1074, did not address the question presented here, namely, whether a public employee asserting both a FEHA claim and nonstatutory claims must exhaust his or her internal administrative remedy with respect to the nonstatutory claims before filing a civil action in superior court.[13] The resolution of this question requires that we review the exhaustion doctrine, and more specifically, the effect of imposing an exhaustion requirement on nonstatutory claims in light of the *Schifando* holding giving a public employee a choice of administrative remedies.

---

[13] This issue was identified but not addressed in *Schifando* because the plaintiff's claim was limited to a statutory violation under the FEHA. The *Schifando* court stated at the conclusion of its opinion: "One note of caution is required. In the present action, Schifando filed the FEHA claim only. We therefore need not decide whether his failure to exhaust the City's procedures would have barred [a tort or contract] claim based on the same acts by the City." (*Schifando, supra*, 31 Cal.4th at p. 1092, fn. 6.)

a. *The Exhaustion Doctrine*

■ Generally, where an adequate administrative remedy is provided by statute or rule of an administrative agency, "relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292–293 [109 P.2d 942].) The requirement of exhaustion of the administrative remedy is "a jurisdictional prerequisite to resort to the courts." (*Id.* at p. 293; see also *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 474–477 [131 Cal.Rptr. 90, 551 P.2d 410] (*Westlake*); *Palmer v. Regents of University of California, supra,* 107 Cal.App.4th at pp. 903–905; *City of Fresno v. Superior Court* (1987) 188 Cal.App.3d 1484, 1490–1491 [234 Cal.Rptr. 136].) " 'The administrative tribunal is created by law to adjudicate the issue sought to be presented to the court. The claim or "cause of action" is within the special jurisdiction of the administrative tribunal, and the courts may act only to *review* the final administrative determination. If a court allowed a suit to be maintained prior to such final determination, it would be interfering with the subject matter jurisdiction of another tribunal. Accordingly, the exhaustion of an administrative remedy has been held *jurisdictional* in California.' " (*Lopez v. Civil Service Com.* (1991) 232 Cal.App.3d 307, 311 [283 Cal.Rptr. 447], citing 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 234, p. 265.)

As noted in *Schifando, supra,* 31 Cal.4th at page 1089, the exhaustion doctrine serves several well-established functions. First, it allows the administrative agency an opportunity to redress the alleged wrong without resorting to costly litigation. (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501 [87 Cal.Rptr.2d 702, 981 P.2d 543] (*Sierra Club*).) Second, even where complete relief is not obtained, it can serve to reduce the scope of the litigation or possibly avoid litigation. (*Ibid.; Westlake, supra,* 17 Cal.3d at p. 476.) Third, an administrative remedy ordinarily provides a more economical and less formal forum to resolve disputes and provides an opportunity to mitigate damages. (*Westlake, supra,* at p. 476; see also *Rojo v. Kliger* (1990) 52 Cal.3d 65, 83 [276 Cal.Rptr. 130, 801 P.2d 373].) Finally, the exhaustion requirement promotes the development of a more complete factual record and allows the administrative agency or entity implicated in the claim an opportunity to apply its expertise, both of which assist later judicial review if necessary. (*Sierra Club, supra,* at p. 501; *Westlake, supra,* at p. 476.)

### b. *Exhaustion of Internal Administrative Remedies Is a Prerequisite to Bringing a Civil Action Alleging Nonstatutory Claims*

Exhaustion of an agency's or entity's internal administrative procedures has been repeatedly required by courts in cases involving the redress of employment-related grievances. These decisions turn, in large part, on the overwhelming policy considerations underlying the exhaustion doctrine.

In *Westlake, supra,* 17 Cal.3d 465, the court concluded that a doctor must exhaust the internal remedies afforded by a private hospital before filing a civil action based on the hospital's decision to deny or withdraw hospital privileges. (*Id.* at pp. 476–477.) In that case, the court summarized the policy concerns and concluded that the exhaustion doctrine applied even though the plaintiff sought only money damages, not reinstatement. The court explained: "Nevertheless, the policy considerations which support the imposition of a general exhaustion requirement remain compelling in this context." (*Id.* at p. 476.)

*Rojo v. Kliger, supra,* 52 Cal.3d 65, explained the "context" in which *Westlake, supra,* 17 Cal.3d 465, applies "where the party or entity whose 'quasi-judicial' determination is challenged—be it hospital, voluntary private or professional association, or public entity—has provided an internal remedy. [Citations.] [¶] The reason for the exhaustion requirement in this context is plain. . . . '[W]e believe as a matter of policy that the association itself should in the first instance pass on the merits of an individual's application rather than shift the burden to the courts.' . . . [¶] Though *Westlake, supra,* 17 Cal.3d 465, concerned the exhaustion of private internal remedies, many courts have nevertheless relied on its reasoning to require exhaustion of 'external' administrative remedies in a variety of public contexts. In so doing, the courts . . . have expressly or implicitly determined that the administrative agency possesses a specialized and specific body of expertise in a field that particularly equips it to handle the subject matter of the dispute." (*Rojo,* 52 Cal.3d at pp. 86–87.) The *Rojo* court noted that these policy reasons, however, did not compel an employee to exhaust the FEHA administrative remedy before filing a civil action for damages alleging nonstatutory causes of action.[14] (*Id.* at p. 88.)

In *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61 [99 Cal.Rptr.2d 316, 5 P.3d 874] (*Johnson*), a case that discussed the exhaustion of judicial remedies, the court explained that *Rojo v. Kliger, supra,* 52 Cal.3d

---

[14] Williams has repeatedly made this point to this court. That, however, is not the question presented here. In this case, we must determine whether Williams must exhaust an *internal* administrative remedy.

at page 86, concluded "in that particular case the doctrine of exhaustion of *administrative* remedies was inapplicable to nonstatutory causes of action because of the absence of an 'internal remedy.' " (*Johnson, supra,* 24 Cal.4th at p. 72.) We interpret the *Johnson* court's statement to mean that where an internal administrative remedy does exist and nonstatutory causes of action are asserted, the internal administrative remedy must be exhausted before filing a civil action.

In the recent case of *Palmer v. Regents of University of California, supra,* 107 Cal.App.4th 899, the court concluded that the failure to exhaust an available internal administrative remedy precluded a civil action alleging wrongful termination. In that case, the plaintiff Patricia M. Palmer (Palmer) was terminated following the major restructuring of her department, and sued the Regents of the University of California (the Regents) in a common law action for wrongful termination in violation of public policy against retaliation for reporting unlawful activity. (*Id.* at pp. 901–902.) Palmer had available two internal grievance procedures. (*Id.* at p. 903.) Palmer filed a grievance, but she later abandoned the internal administrative process. (*Ibid.*) The Regents successfully moved for summary judgment on the ground that Palmer failed to exhaust the internal administrative remedy before filing her lawsuit.

Relying on the exhaustion doctrine of *Westlake, supra,* 17 Cal.3d 465, the *Palmer* court concluded that the plaintiff's failure to exhaust the Regents' internal grievance procedure precluded her from pursuing a civil action. (*Palmer v. Regents of University of California, supra,* 107 Cal.App.4th at p. 903–906.) The court reasoned, "The ' "context" to which *Westlake* properly applies' is precisely the situation now before this court. As was true in *Westlake,* plaintiff Patricia Palmer had available to her internal grievance procedures that, if used, could have eliminated or at least minimized any injury she has sustained. [Citation.] [Fn. omitted.]" (*Id.* at pp. 905–906.) *Palmer,* and the cases it relied on, confirm the compelling public policy previously discussed that supports the exhaustion of internal administrative remedies before filing a civil action alleging nonstatutory claims. These cases, however, all were decided before the *Schifando* court held that a public employee asserting a FEHA claim may bypass the internal administrative remedy provided he or she exhausted the FEHA administrative remedy.

### c. *Judicial Review of Administrative Decisions Is a Prerequisite for Filing a Civil Action for Damages*

When a public or private employee pursues an internal administrative remedy, the employee must timely seek judicial review from an adverse administrative decision by filing an administrative mandamus action before

filing a civil action. (*Westlake*, *supra*, 17 Cal.3d at pp. 482–485; *Johnson*, *supra*, 24 Cal.4th at p. 76.) This is known as the exhaustion of judicial remedies.

In *Johnson*, *supra*, 24 Cal.4th 61, our Supreme Court held that the doctrine of exhaustion of judicial remedies applied to bar a city employee's claims of discrimination under the FEHA. In that case, the court held that the failure to exhaust judicial remedies by challenging the administrative agency's findings in an administrative mandamus action caused those findings to be binding in a subsequent civil action asserting a FEHA claim. (*Id.* at p. 76.)

The plaintiff in *Johnson* was an assistant city manager who claimed that he had been dismissed for complaining about the sexual discrimination of a coworker and administratively challenged his dismissal. The administrative process concluded with a finding that the dismissal was for economic reasons. (*Johnson*, *supra*, 24 Cal.4th at p. 66.) Rather than filing an administrative mandamus action in superior court, the plaintiff filed a complaint with the Department, obtained a right-to-sue letter, and filed a civil action two years after he had been dismissed. In conjunction with the civil complaint, the plaintiff also filed a petition for writ of administrative mandamus. The trial court granted summary judgment, concluding that the writ of mandamus was barred by the doctrine of laches, and the FEHA claim was barred because the plaintiff was bound by the administrative finding. (*Id.* at pp. 66–67.)

The *Johnson* court affirmed, concluding that, based on *Westlake*, *supra*, 17 Cal.3d 465, the plaintiff's failure to obtain a judicial determination setting aside the city's final adverse finding meant that the plaintiff could not bring a claim under the FEHA. (*Johnson*, *supra*, 24 Cal.4th at pp. 69–71.) It held that "when . . . a public employee pursues administrative civil services remedies, receives an adverse finding, and fails to have the finding set aside through judicial review procedures, the adverse finding is binding on discrimination claims under the FEHA." (*Id.* at p. 76.) In the *Johnson* court's view, to refuse to give binding effect to the findings of an administrative agency's quasi-judicial proceedings would "undermine the efficacy of such proceedings, rendering them in many cases little more than rehearsals for litigation." (*Id.* at p. 72.) Thus, the *Johnson* court affirmed the public policy reasons supporting the exhaustion doctrine even when a public employee alleges a FEHA claim.

d. *Schifando Attempts to Harmonize Johnson*

The effect of the Supreme Court's decision in *Johnson,* therefore, appears to be that for public employees who choose to pursue an internal administrative remedy, a successful administrative mandamus action is a prerequisite to any enforceable rights under the FEHA. (See, e.g., *Castillo v. City of Los Angeles*

(2001) 92 Cal.App.4th 477, 484–486 [111 Cal.Rptr.2d 870] [FEHA and wrongful termination claims were barred because the public employee lost on the merits in an administrative mandamus action to set aside the adverse administrative findings].) *Johnson* is difficult to reconcile with *Schifando*, which permits a public employee to bypass the internal administrative remedy to proceed directly with a FEHA claim.

The *Schifando* court, however, rejected any notion that its decision was inconsistent with *Johnson*. "*Johnson* held only that because the employee had exhausted the remedies the city offered, and had not exhausted his judicial remedies, the city's agency's findings were binding on his subsequent FEHA claims. [Citation.] We reasoned that refusing to give binding effect to those quasi-judicial findings would 'undermine the efficacy of such proceedings, rendering them in many cases little more than rehearsals for litigation.' [Citation.]" (*Schifando*, *supra*, 31 Cal.4th at p. 1090.)

The *Schifando* court concluded that its holding did not disturb the principles enunciated in *Johnson*, *supra*, 24 Cal.4th 61. "We serve judicial economy by giving collateral estoppel effect to appropriate administrative findings. *Johnson*'s requirement that employees exhaust *judicial* remedies ensures proper respect for administrative proceedings. It requires employees challenging administrative findings to do so in the appropriate forum, by filing a writ of administrative mandamus petition in superior court. *Johnson* also ensures that employees who choose to utilize internal procedures are not given a second 'bite of the procedural apple.' " (*Schifando*, at pp. 1090–1091.)

The *Schifando* dissent, however, reasoned that the effect of the majority's ruling was "a marked departure from the spirit if not the letter of" *Johnson*, *supra*, 24 Cal.4th 61. (*Schifando*, *supra*, 31 Cal.4th at p. 1104 (dis. opn. of Baxter, J.).) "Given *Johnson*'s requirement that an employee pursue and perfect the internal grievance process *through the final stage of judicial mandamus review* as a precondition to filing an FEHA-based discrimination action in superior court, and given that, under the majority's holding in this case, a similarly situated employee will be free to bypass the internal administrative grievance procedure altogether and directly file suit after requesting and receiving a right-to-sue letter from the Department, few if any employees will have the financial incentive, or the tenacity, to choose the route of conciliation, possible settlement, or mitigation of damages over the shortcut straight to court." (*Id.* at pp. 1104–1105 (dis. opn. of Baxter, J.).)

In our view, *Johnson*, requiring a public employee to pursue and perfect the internal administrative procedure through the final stage of judicial mandamus, and *Schifando*, *permitting* a public employee to bypass the internal administrative procedure, are easily reconciled when only a FEHA

cause of action is alleged, but a significant tension arises when a public employee is asserting both a FEHA claim and FEHA-related nonstatutory claims. As discussed below, in such a circumstance, there would exist the same procedural labyrinth addressed in *Schifando* in which the court exempted a FEHA claim because, among other things, an adverse ruling in the mandamus action would detrimentally impact a public employee's right to proceed with a FEHA cause of action. The same problem would arise if a public employee were required to proceed in an administrative forum on FEHA-related nonstatutory claims that might have a preclusive effect on his or her FEHA claim. In these circumstances, to require exhaustion of those claims would nullify *Schifando*, which gives the public employee the option to bypass the internal administrative remedy and affords the public employee all the rights and remedies under the FEHA.

### 4. *Schifando Must Necessarily Exempt from the Internal Exhaustion Requirement FEHA-Related Nonstatutory Claims*

#### a. *FEHA-Related Nonstatutory Claims That Might Have a Preclusive Effect on a FEHA Claim Are Exempt from Exhaustion*

In order to preserve a public employee's right to proceed with a FEHA claim, and to have the same rights as private employees, we conclude that the *Schifando* exemption should extend to FEHA-related nonstatutory claims. Where a FEHA-related nonstatutory claim, if unsuccessfully pursued to exhaustion in administrative proceedings, would have a preclusive impact on a FEHA claim, *Schifando* requires that it must also be exempt from the exhaustion requirement. Thus, public employees, alleging both a FEHA claim and FEHA-related nonstatutory claims, have the option of pursuing the internal administrative remedy or proceeding with those claims in a civil action, provided the FEHA exhaustion requirement has been satisfied. A contrary holding would impair a public employee's right to pursue a FEHA-related claim because the administrative process might result in a finding that has a preclusive effect on the FEHA claim. This is the same procedural problem that compelled the *Schifando* court to exempt a public employee from the burden of pursuing both a FEHA administrative remedy and an internal administrative remedy.

In this case, HACLA's administrative procedures demonstrate infirmities similar to those described in *Schifando*. For example, the HACLA procedures require a much shorter time period to resolve grievances than under the FEHA. Thus, HACLA would hear and decide the matter first. Although HACLA's procedures provide a hearing and an opportunity to present evidence, depending upon the agency administrative procedures, an aggrieved

public employee might not have a chance to adequately prepare his or her case in the administrative process. This would further impact any chance of succeeding in the administrative proceedings. Thereafter, a court reviewing the matter in a mandamus action would give deference to the agency's or entity's decision. Even under the deferential independent judgment rule, the public employee is at a disadvantage in an administrative mandamus action because the trial court must afford the administrative agency's findings a strong presumption of correctness. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 816–817 [85 Cal.Rptr.2d 696, 977 P.2d 693].) If the reviewing court upheld the administrative findings, its determination on those issues would potentially have a preclusive effect (or collateral estoppel effect) on any subsequent FEHA action.

To illustrate the problem, suppose a public employee is terminated and challenges that termination on the grounds that he was terminated because of his race. If the employee intends to later bring a civil action alleging both a FEHA and wrongful termination in violation of public policy claim based on the FEHA's proscription against discrimination, without the rule we articulate here, the public employee would first have to exhaust his internal administrative remedy on the wrongful termination claim. An administrative finding that the termination was lawful would have preclusive effect not only on the wrongful termination claim in a civil action, but also on the FEHA claim. Such a result would effectively nullify *Schifando* and deprive the public employee of the benefit of the procedural safeguards available under the FEHA to vindicate a civil rights violation. Thus, in order to give full effect to *Schifando* and avoid the problem we have identified, to the extent that a FEHA-related nonstatutory claim might have a preclusive effect on a FEHA claim (such as in the example set out above), if unsuccessfully pursued administratively, such claim must also be exempt from the internal administrative exhaustion requirement.

Thus, as was the case in *Schifando*, the policy reasons for enforcing an exhaustion requirement, including judicial economy, agency expertise, and potential for swift resolution of grievances, are not served by requiring a public employee to pursue FEHA-related nonstatutory claims in a separate forum that might result in inconsistent rulings, or worse, preclude a public employee from pursuing a FEHA claim in the forum of his or her choice.

As HACLA points out, based on our conclusion here, a public employee might bypass altogether the internal administrative remedy, but this is also true under *Schifando*. Our decision is not a marked departure from *Schifando*. When a public employee alleges both a FEHA claim and a FEHA-related nonstatutory claim, we simply conclude that the public employee should not be required to exhaust the internal administrative remedy

on the FEHA-related nonstatutory claims. To hold otherwise would vitiate *Schifando* by forcing a public employee to first exhaust internal administrative remedies on claims and thereby risk the creation of a legal bar to his or her FEHA claim.

HACLA also contends that there is no need to further carve out an exemption to the exhaustion doctrine because a public employee is free to challenge the preclusive effect of the mandamus action in the civil action. This argument, however, ignores the procedural advantages the agency or entity has during the administrative process and the deferential standard of review in the administrative mandamus action. Moreover, it places the public employee pursuing a civil rights violation on an uneven playing field and undercuts the rationale of *Schifando,* which eliminated those impediments and permitted public employees to choose the appropriate forum to pursue a FEHA violation.

> b. *This Limited Exception Does Not Eliminate the Exhaustion Requirement on Those Nonstatutory Causes of Action That Are Not FEHA Related and Have No Preclusive Effect on a FEHA Claim*

It is Williams's stated position that once a FEHA claim has been alleged, all other causes of action related to the same facts are exempt from the exhaustion requirement.[15]

Thus, for example, in Williams's view, an employee who is terminated based on his race, and who also has alleged theories that include a FEHA cause of action, and a cause of action for breach of an implied contract not to be terminated except for good cause, would not be required to exhaust his internal administrative remedy on the contract claim. He is wrong. In order to fall within the internal exhaustion requirement exemption on a

---

[15] We need not dwell on HACLA's attempt to distinguish the authority Williams cites in favor of his proposed rule exempting all nonstatutory causes of action that are alleged along with a FEHA claim. It bears repeating that we have rejected such a rule. Moreover, none of the cited cases are persuasive in advancing his position. *Brown v. Superior Court, supra,* 37 Cal.3d at pages 482, 486–487, concluded that the special venue provisions of the FEHA control over the conflicting general venue provisions when a complaint alleges FEHA and non-FEHA causes of action. *Snipes v. City of Bakersfield* (1983) 145 Cal.App.3d 861, 865–868 [193 Cal.Rptr. 760], concluded that actions under the FEHA are not subject to the claim presentation requirement of the Tort Claims Act. Finally, *Walrath v. Sprinkel* (2002) 99 Cal.App.4th 1237, 1242 [121 Cal.Rptr.2d 806], confirmed the well-settled rule that a common law cause of action for wrongful discharge in violation of public policy, even if grounded on the FEHA, does not require exhaustion of the statutory administrative remedy. We do not rely on any of these cases, and find them to be of little value in resolving what we perceive to be a conflict between applying *Schifando* and *Johnson* in a case such as the one presented here, when both FEHA and nonstatutory causes of action have been alleged.

FEHA-related nonstatutory cause of action that we articulate here, the primary focus is not on whether the claim is based on the same set of facts, although such circumstance might well bear on the issue, *but on whether the resolution of the nonstatutory claim will have a preclusive impact on the FEHA claim.* The resolution of that question in the example we utilized above is clear. A final determination that an employee is an at-will employee and thus has no valid claim for breach of an implied contract, would have no detrimental impact on that employee's FEHA claim. Thus, the employee would be required to exhaust his or her internal administrative remedies on the contract claim, and would have the option of pursuing the statutory FEHA claim in the appropriate forum. This makes sense because an adverse resolution of the contract claim would not result in inconsistent findings and would present no impediment to the pursuit of a FEHA claim.[16]

█ In its letter brief, HACLA argues that extending *Schifando* to FEHA-related nonstatutory claims would vitiate the doctrine of exhaustion of administrative remedies. According to HACLA, an employee could circumvent the exhaustion requirement on the nonstatutory claims by simply alleging a FEHA claim. HACLA presents two examples to support this position. In both examples, the employee asserts a *nonviable* FEHA claim and a claim for wrongful termination in violation of a public policy that is *not* related to the FEHA.[17] HACLA then concludes that in these circumstances, while the FEHA claims would not survive, the wrongful termination claims would, and the public employee would be permitted to bypass the internal administrative remedy and proceed to superior court. HACLA's examples and reasoning are helpful to point out the limited nature of our

---

[16] By contrast, a plaintiff who brings a civil action alleging (1) a cause of action under FEHA on the grounds that he was terminated because of his race, (2) a wrongful termination in violation of public policy based on the FEHA's proscription against discrimination, and (3) a claim for intentional infliction of emotional distress, would be exempt from the internal administrative exhaustion as to all three causes of action. In these circumstances, the nonstatutory claims are FEHA related and an adverse resolution of those claims would have a preclusive impact on the FEHA claim.

[17] The first example relates to the discharge of a teacher. His employer is a school, and its personnel rules contain internal grievance procedures to challenge demotions or terminations. Teacher does not utilize these procedures. Rather, teacher sues on the grounds that he was terminated in violation of public policy (a *common law* wrongful discharge claim) and in violation of FEHA (without alleging any conduct condemned by FEHA) because he reported violations of the False Claims Act (because school misstated daily attendance figures and thereby received more money from the state than was due).

The second example involves a doctor at a private hospital (whose by-laws also contain provisions for grieving discharges) alleges that he was discharged in retaliation for reporting violations of antireferral laws and he also alleges that such discharge violated FEHA.

holding. Again, we reject the argument that a nonstatutory claim[18] is exempt from the internal exhaustion requirement simply because it has been joined with a FEHA claim. If a wrongful termination cause of action seeks redress on grounds that would *not* implicate a FEHA claim, the exhaustion rule would apply. Thus, in HACLA's examples, a wrongful termination in violation of public policy claim implicating a public policy other than the FEHA, would be subject to the exhaustion requirement, provided the resolution of the issues would not have preclusive effect on the FEHA claim. Moreover, at the pleading stage, we are assuming a viable FEHA claim. Even under *Schifando*, a public employee may initially avoid the exhaustion requirement by pleading a FEHA claim without regard to whether or not he or she will succeed on that claim. Thus, contrary to HACLA's position, the extension of *Schifando* when a public employee also alleges FEHA-related nonstatutory claims does not vitiate the exhaustion requirement. We simply conclude that to the extent that a prior administrative resolution of a FEHA-related nonstatutory claim would have a preclusive impact on a FEHA claim, public employees should not be required to exhaust their internal administrative remedy on those claims. In all other circumstances, the exhaustion requirement will apply.[19]

■ Applying the rule we articulate here to Williams's nonstatutory causes of action, we conclude that Williams had to exhaust HACLA's internal administrative remedy. The wrongful demotion and constructive termination causes of action are based upon adverse employment actions allegedly taken because Williams responded to a civil subpoena. These claims are not based on a claimed violation of the FEHA, and their adverse resolution in an administrative proceeding would have no preclusive effect on Williams's FEHA claim of retaliation. (§ 12940, subd. (h).) Therefore, Williams had to exhaust his internal administrative remedies with respect to these claims. To hold otherwise would, as HACLA fears, create an incentive for an employee to file meritless FEHA claims in every case in order to circumvent the exhaustion requirement. In light of our conclusion, we must now address Williams's challenges to HACLA's internal administrative process.

---

[18] We remind the reader that we make a distinction between FEHA-related nonstatutory claims and all other nonstatutory claims (and the latter are referred to by that term). (See fn. 2, *ante*.)

[19] In its letter brief, HACLA questions the viability of Williams's FEHA claim. Because of the procedural posture of this case, we need not address whether Williams can succeed on his claim, only whether he was required to plead that he exhausted his administrative remedy in order to proceed with that claim. We express no opinion on whether Williams should, or should not, prevail on a FEHA claim.

### 5. Although It Is Couched in Permissive Language, Williams Had to Exhaust HACLA's Internal Administrative Remedy on His Nonstatutory Claims Before Filing a Civil Action

Seizing on the permissive language in HACLA's appeals procedure (Section 108:0906), Williams argues that HACLA's administrative remedy was optional and his voluntary election to appeal was not irrevocable nor a precondition to a civil action. We reject this argument based on the well-established principle that when an administrative remedy is made *available*, it must be exhausted before resorting to the courts.

Section 108:0906 provides in part: "Whenever a permanent employee has been discharged, demoted or suspended without pay for five (5) or more work days, such employee *may* appeal . . . ." (Italics added.) Williams asserts that "may" as used in section 108:0906 means "may," not "must" or "shall." This semantic argument, one we often find convincing in construing the plain meaning of statutes, initially has appeal but is refuted by several cases holding that even though an administrative remedy is couched in permissive language, the administrative remedy must be exhausted before filing a civil action.

#### a. Permissive Statutory Language Requires Exhaustion

The seminal case on exhaustion of administrative remedies is *Abelleira v. District Court of Appeal, supra,* 17 Cal.2d 280. *Abelleira* involved a dispute over whether employers who objected to the award of employee benefits under the California Unemployment Insurance Act (Act) could seek judicial relief before completing the appeal process under the Act. At the time, the Act contained a complete administrative proceeding and two appeals. Specifically the Act provided: "If payment is ordered, any employer whose reserve account is affected by the payment *may* intervene and appeal, and payment will be stayed pending said appeal." (*Id.* at p. 283, italics added.) A referee would be appointed to the hear the appeal, and would make findings. Those findings would become final unless further appealed to the commission. (*Id.* at pp. 283–284.) If the referee affirmed the initial determination, however, benefits were paid regardless of any subsequent appeal to the commission. (*Id.* at p. 284.)

The employers in *Abelleira* appealed the initial payment determination. Instead of appealing to the commission following the referee's adverse findings, the employers sought a writ of mandate in the Court of Appeal. (*Abelleira v. District Court of Appeal, supra,* 17 Cal.2d at pp. 284–285.) The Court of Appeal issued an alternative writ of mandate and a temporary restraining order directing the commission to withhold payment of unemployment benefits. (*Id.* at p. 285, 109 P.2d 942.) Less than a week later, the

employers filed an appeal from the referee's decision to the commission. (*Ibid.*) Thereafter, the Supreme Court granted a writ of prohibition, filed by one of the employees, on the ground that the Court of Appeal had no jurisdiction to issue the writ of mandate before the completion of the administrative appeals process. (*Id.* at pp. 291–296, 306.) The *Abelleira* court applied the rule that "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Id.* at p. 292.) According to the court, the filing of the appeal with the commission after the mandate and stay order was not enough to satisfy the exhaustion requirement; the administrative remedies were not exhausted until the appeal had been fully prosecuted. (*Id.* at p. 295.)

*Park 'N Fly of San Francisco, Inc. v. City of South San Francisco* (1987) 188 Cal.App.3d 1201 [234 Cal.Rptr. 23] also required exhaustion of administrative remedies despite permissive language in a city ordinance. That case involved a local ordinance imposing a business license tax on operators of commercial parking facilities. (*Id.* at p. 1205.) The ordinance stated that a licensee aggrieved by a classification assignment " 'may apply to the collector for reclassification.' " (*Id.* at p. 1207.) The collector then had to investigate and render a decision. The licensee could have appealed the collector's decision to the city manager. Park 'N Fly did not file a formal grievance or appeal to the city manager. (*Ibid.*) Although the ordinance language was permissive, the court concluded that if an administrative remedy was provided, it must be pursued and exhausted in the appropriate administrative agency before bringing a court action. (*Id.* at pp. 1207–1208.)

Likewise, in *Woodard v. Broadway Fed. S. & L. Assn.* (1952) 111 Cal.App.2d 218 [244 P.2d 467], the court construed permissive language in regulations promulgated by the Home Loan Bank Board (board) under the Home Owners' Loan Act of 1933 to require exhaustion of administrative remedies when challenging board elections. The rules and regulations were "comprehensive, explicit, and govern the operation of federal savings and loan associations from their inception to dissolution." (*Woodard*, at p. 223.) Part 142.2 of the regulations provided that any person *may* request a hearing in connection with any matter arising under any provision of the rules and regulations, including matters arising under the charter and bylaws. The board had discretion to order a hearing whether or not a request had been made in such matters. Broadway's charter and bylaws expressly covered the dispute related to board elections. Therefore, the court reasoned that since an administrative remedy had been provided, the plaintiffs must first exhaust that remedy before turning to the courts to seek relief to determine the validity of the challenged board election. (*Woodard*, at pp. 224–225.)

### b. *Permissive Internal Administrative Procedures Require Exhaustion*

The same exhaustion rule, that is, if an administrative remedy is made available it must be exhausted, applies to what appear to be permissive internal administrative remedies. In *Morton v. Superior Court* (1970) 9 Cal.App.3d 977 [88 Cal.Rptr. 533], the court explicitly rejected the argument that Williams advances here when considering whether permissive language in the city's grievance procedure was mandatory. In that case, city police officers brought a superior court action seeking a judicial declaration that the time consumed by policemen in putting on and taking off their uniforms and during lunch periods was compensable overtime. (*Id.* at p. 981.) The policemen filed their court action without first filing a complaint with the city under its grievance procedure. (*Ibid.*) The grievance procedure provided that a city employee with a complaint relating to his or her employment *may* file a written grievance with his or her immediate supervisor, and if not satisfied with that decision, he or she *may* present the grievance to his or her department head, and subsequently *may* appeal to the city manager through a grievance advisory committee. (*Id.* at p. 980.)

The policemen maintained, among other things, that they did not have to exhaust the city's grievance procedure because it was permissive, not mandatory. (*Morton v. Superior Court, supra,* 9 Cal.App.3d at p. 982.) The court rejected that argument. "It is the rule that if an administrative remedy is available, it must be exhausted even though the administrative remedy is couched in permissive language. [Citations.]" (*Ibid.*) The court construed the permissive language as giving the policemen the option to file a grievance in the first instance, not the option to bypass the grievance procedure. "Understandably, a city employee is not required to file a grievance if he does not wish to do so, but he must first pursue this administrative remedy before resorting to the judicial process." (*Ibid.*)

The *Morton* court, however, cited *Alexander v. State Personnel Bd.* (1943) 22 Cal.2d 198 [137 P.2d 433], to support its conclusion. In *Alexander*, the court held that when the Legislature has provided that a petitioner before an administrative tribunal *may* seek reconsideration or rehearing of an adverse decision of that tribunal, the petitioner *must* seek a rehearing before filing a civil action. (*Id.* at pp. 199–200.)

The California Supreme Court abandoned the so-called *Alexander* rule in *Sierra Club v. San Joaquin Local Agency Formation Com., supra,* 21 Cal.4th at pages 493–494. The court held that the right to petition for judicial review of a final decision of an administrative agency was not affected by the failure to file a motion seeking a rehearing before that agency. (*Id.* at p. 510.) Such a

procedure did not advance the exhaustion doctrine because the party would be required to raise for a second time the same evidence and legal arguments previously raised. In the case of a motion for reconsideration or a rehearing, "the administrative record has been created, the claims have been sifted, the evidence has been unearthed, and the agency has already applied its expertise and made its decision as to whether relief is appropriate. The likelihood that an administrative body will reverse itself when presented only with the same facts and repetitive legal arguments is small." (*Id.* at p. 501.) Moreover, according to the court, it is unlikely to reduce the burden of the courts, and would ultimately just delay the inevitable at the additional expense to the parties, nor is it likely that the administrative agency would correct any mistakes after a full hearing on the matter. (*Id.* at pp. 501–502.)

The same reasons for abandoning the *Alexander* rule, however, do not exist in the factual context before us. There is no way to determine whether, after a full hearing before the commission, that HACLA's decision to demote Williams would have remained the same. Unlike a motion for reconsideration, the appeal hearing before the commission or an appointed hearing officer would have involved a review of the adverse employment decisions upon which Williams could have created a record, sifted his claims, unearthed evidence, and given HACLA an opportunity to apply its expertise in order to make a final decision as to the appropriate remedy. Thus, nothing in *Sierra Club, supra,* 21 Cal.4th 489, abrogates the well-settled principle that where an administrative remedy is available, even if couched in permissive language, it must be exhausted before turning to the courts.

Recently, in *Palmer v. Regents of University of California, supra,* 107 Cal.App.4th 899, Division 7 of this court concluded that permissive internal administrative remedies provided by the university must be exhausted before filing a civil action. (*Id.* at pp. 905–906.) As discussed, in *Palmer,* the plaintiff brought a civil action for wrongful termination alleging retaliation for whistleblowing activities rather than availing herself of two internal grievance procedures at the university. (*Id.* at pp. 902–903.) At least one, if not both, of the internal grievance procedures was voluntary. (*Id.* at pp. 910–911 (dis. opn. of Johnson, J.).) The Regents successfully moved for summary judgment on the ground that Palmer failed to exhaust her internal administrative remedies. (*Id.* at p. 903.) The *Palmer* court affirmed, concluding that Palmer's failure to exhaust her internal administrative remedies was a jurisdictional bar to her wrongful termination in violation of public policy claim.[20] (*Ibid.*)

---

[20] The *Palmer* court bolstered its conclusion by relying on the policy underlying section 8547.10 (the California Whistleblower Protection Act). Subdivision (c) of that section was specifically applicable to university employees and required Palmer, as a university employee, to exhaust the university's grievance procedures before bringing a civil action. Indeed, one of

Although the *Palmer* court faced a similar issue to the one Williams advances here, that is, whether a public employee must exhaust what appeared to be a permissive internal administrative remedy, its decision did not dwell on the distinction between a permissive and mandatory exhaustion requirement. Instead, the court focused on the policy reasons supporting the exhaustion doctrine, and concluded that the exhaustion doctrine does not turn on contractual principles. (*Palmer v. Regents of University of California, supra*, 107 Cal.App.4th at p. 905.) On this point, the *Palmer* dissent disagreed. The dissenting opinion concluded that the exhaustion requirement should not apply for several reasons, including that a specific exhaustion requirement should have been embodied in an agreement between the employee and employer. (*Id.* at pp. 912–913 (dis. opn. of Johnson, J.).) This is the same point that Williams implicitly urges here.

We do not, however, view the exhaustion doctrine as contractually based and side with the *Palmer* majority that the policy reasons supporting the exhaustion requirement compel its application here. Nor do we agree with Williams that there is a distinction in requiring the exhaustion of administrative remedies depending upon whether the employer is a university, private association, or a public entity. The exhaustion requirement flows from the adequacy and availability of an administrative remedy. Thus, we conclude that where, as here, there is an adequate and available internal administrative remedy, Williams must exhaust that remedy before filing a civil action alleging nonstatutory causes of action arising from his employment.

Williams was twice given the opportunity to amend his complaint to assert that he had exhausted HACLA's internal administrative remedy with respect to his nonstatutory claims, and did not do so. Given his inability to allege that he satisfied the exhaustion requirement, the trial court correctly concluded that Williams could not allege causes of action for wrongful demotion in violation of public policy and constructive discharge in violation of public policy.

### 6. *Williams Has Not Alleged Futility to Excuse the Exhaustion Requirement*

Williams contends that even if he were required to exhaust HACLA's internal administrative remedy, it would have been futile to do so given the language in the second notice that he would be terminated for job abandonment. This argument is without merit. While it is true that the rule requiring exhaustion of internal administrative remedies does not apply where

---

the internal grievance procedures available in *Palmer* was the procedure implementing the university's obligations under section 8547.10. (*Palmer v. Regents of University of California, supra*, 107 Cal.App.4th at pp. 908–909.)

an administrative remedy would be futile (*County of San Diego v. State of California* (1997) 15 Cal.4th 68, 89 [61 Cal.Rptr.2d 134, 931 P.2d 312]), Williams has failed to demonstrate that such futility exception has any application here.

As the trial court noted, Section 108:0906 affords an appeals process that includes review by the executive director and the commission. There is nothing in the second notice that indicates that either the executive director and/or the commission had reviewed and approved the termination decision. Thus, we cannot reach the conclusion urged upon us by Williams that HACLA's internal appeals process would have been futile.

### 7. *Williams Cannot Allege Equitable Estoppel to Revive His Nonstatutory Claims*

In a letter brief following oral argument, Williams argued for the first time that HACLA should be estopped from relying on the internal administrative remedy because Williams (and his counsel) were misled based on the word "may" in Section 108:0906. We reject this argument for three reasons.

First, equitable estoppel is not a recognized exception to the exhaustion doctrine. (See *County of San Diego v. State of California, supra,* 15 Cal.4th at p. 89 [futility exception]; *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 342 [124 Cal.Rptr. 513, 540 P.2d 609] [inadequacy exception]; *Department of Personnel Administration v. Superior Court* (1992) 5 Cal.App.4th 155, 170–171 [6 Cal.Rptr.2d 714] [irreparable injury exception].)

Second, application of equitable estoppel would be particularly troubling here because Williams's claim is based solely on the permissive language in Section 108:0906. As discussed above, courts have consistently and repeatedly held that irrespective of the permissive language, where an adequate and available administrative remedy is provided, it must be exhausted before filing a civil action.

Third, there was no affirmative conduct on the part of HACLA upon which Williams relied. It is Williams's and his attorney's interpretation of Section 108:0906 that governed their belief that HACLA's internal appeals process was optional. For this reason, Williams's reliance on *Ard v. County of Contra Costa* (2001) 93 Cal.App.4th 339 [112 Cal.Rptr.2d 886] is misplaced. Aside from the fact that *Ard* addressed a statute of limitations bar, and not the exhaustion doctrine, that case involved *affirmative* conduct by the county

counsel, upon which plaintiff had relied to his detriment. (*Id.* at pp. 342, 346–348.) Thus, Williams has failed to show in this context that he could allege sufficient facts to plead equitable estoppel. (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [272 Cal.Rptr. 387].)

## DISPOSITION

For the reasons stated, the judgment is affirmed in part, and reversed in part. The matter is remanded for further proceedings consistent with the views expressed herein. Each party to bear their own costs on appeal.

Kitching, J., and Aldrich, J., concurred.