[No. C054168. Third Dist. Feb. 15, 2008.]

CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM et al.,
Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
GARY TROBEE, Real Party in Interest.

**COUNSEL**

K. William Curtis, Warren C. Stracener, Sandra L. Lusich and Tom Dyer for Petitioners.

No appearance for Respondent.

No appearance for Real Party in Interest.

**OPINION**

**RAYE, J.**—After the California Public Employees' Retirement System (PERS)[1] rendered its adverse findings, senior information systems analyst supervisor Gary Trobee (plaintiff) continued to prosecute his whistleblower claim (Gov. Code, § 8547.3; Lab. Code, § 1102.5) without challenging those findings by mandamus. He contends he has the right to pursue a civil action for damages once the State Personnel Board (SPB) issues or fails to issue findings and his government claim is rejected. The trial court overruled PERS's demurrer to the first cause of action for retaliation under the California Whistleblower Protection Act (the Whistleblower Act; Gov. Code, § 8547 et seq.) and sustained without leave to amend PERS's demurrer to the other two causes of action. Plaintiff does not challenge the trial court's rulings as to the second and third causes of action. We grant PERS's petition for a peremptory writ of mandate directing respondent superior court to set aside and vacate its order overruling PERS's demurrer to the first cause of action.

■ We conclude that (1) because plaintiff was provided the opportunity to submit evidence, name witnesses, and argue his claim, he was provided with the type of quasi-judicial hearing sufficient to satisfy Code of Civil Procedure section 1094.5 even though the SPB was not required to provide an evidentiary hearing; and (2) because the Legislature did not clearly provide that a whistleblower could pursue alternative remedies and did require plaintiff to initiate administrative proceedings, he is collaterally

---

[1] Although petitioners' counsel refers to PERS as the California Public *Employment* Retirement System, the correct name is the California Public *Employees'* Retirement System.

estopped from relitigating the findings that were actually litigated in the quasi-adjudicatory proceedings.

## PLEADINGS

We assume, as we must, the truth of the factual allegations in the underlying complaint. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 [25 Cal.Rptr.3d 320, 106 P.3d 976] (*Campbell*).) Plaintiff resigned from state service effective August 13, 2004, purportedly as a result of his supervisor's retaliatory conduct. On August 31, 2004, he filed a whistleblower complaint with the SPB. On December 8, 2004, SPB's executive officer recommended the dismissal of plaintiff's complaint in its entirety. Plaintiff received the executive officer's notice of findings, including the admonition that he had the right to file a petition for a full evidentiary hearing within 30 days. His request for a hearing was denied by the SPB, at which time the findings became final.

Rather than filing a petition for a writ of mandate to challenge the SPB decision, plaintiff filed a civil complaint alleging retaliation in violation of section 8547.8 of the Government Code and section 1102.5 of the Labor Code. Respondent superior court rejected the notion that plaintiff's failure to exhaust his judicial remedies barred a civil action and concluded that section 8547.8 "expressly allows an action at law to be brought once findings are made, or not made. No other conditions are attached to the right to bring the action." Thus, the court overruled PERS's demurrer to the whistleblower cause of action under the Whistleblower Act.

## DISCUSSION

### I

■ The Whistleblower Act embodies a strong public policy to deter and punish those who retaliate against public employees for reporting wrongdoing. "The Legislature finds and declares that state employees should be free to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear of retribution. The Legislature further finds and declares that public servants best serve the citizenry when they can be candid and honest without reservation in conducting the people's business." (Gov. Code, § 8547.1.)[2] ■ Thus, state employees who retaliate against whistleblowers are subject to fines, imprisonment, disciplinary proceedings, and civil liability, including compensatory damages, punitive damages, and attorney fees. (§ 8547.8, subds. (b), (c).)

---

[2] All further statutory references are to the Government Code unless otherwise indicated.

■ To accomplish its stated objectives, the Whistleblower Act provides remedies for the injured whistleblower as well. If the SPB concludes that improper activity has occurred, it "may order any appropriate relief, including, but not limited to, reinstatement, backpay, restoration of lost service credit, if appropriate, compensatory damages, and the expungement of any adverse records of the state employee or applicant . . . who was the subject of the alleged acts of misconduct prohibited by Section 8547.3." (§ 19683, subd. (c).) Moreover, the SPB must make reports to the Governor and the Legislature. (§ 19683, subd. (f).)

■ The Whistleblower Act also allows a whistleblower to bring a civil suit for damages. Section 8547.8, subdivision (c) states, in pertinent part: "In addition to all other penalties provided by law, any person who intentionally engages in acts of reprisal, retaliation, threats, coercion, or similar acts against a state employee or applicant for state employment for having made a protected disclosure shall be liable in an action for damages brought against him or her by the injured party."

The Legislature has conditioned the right to bring a civil action, however. Section 8547.8, subdivision (c) also provides: "[A]ny action for damages shall not be available to the injured party unless the injured party has first filed a complaint with the State Personnel Board pursuant to subdivision (a) [of this section], and the board has issued, or failed to issue, findings pursuant to Section 19683." Section 19683, subdivision (a) directs the "State Personnel Board [to] initiate a hearing or investigation of a written complaint of reprisal or retaliation as prohibited by Section 8547.3 within 10 working days of its submission. The executive officer shall complete findings of the hearing or investigation within 60 working days thereafter, and shall provide a copy of the findings to the complaining state employee or applicant for state employment and to the appropriate supervisor, manager, employee, or appointing authority."

■ The trial court found that the plain language of the Whistleblower Act requires nothing more of a plaintiff than to file a complaint with the SPB and await its findings or its failure to issue findings within the statutory timeframe set forth in section 19683. We recognize, of course, that we must not ignore the plain meaning of the statute by either adding words that are not there or ignoring language that is. (*Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, 28–29 [285 Cal.Rptr. 515].)

The respondent court's ruling misses the mark in that it attributes far too great a significance to the Legislature's silence and is reminiscent of arguments lodged by a university whistleblower and rejected by the Supreme Court in *Campbell*, *supra*, 35 Cal.4th at pages 324–329. In *Campbell*, as here,

the whistleblower argued that the pertinent statutes do not require the exhaustion of administrative remedies, and therefore, the Legislature must have intended to abrogate the exhaustion requirement. (*Id.* at p. 324.) The whistleblower pointed out that the Legislature certainly knew how to incorporate an exhaustion requirement as it did in section 8547.10. Thus, legislative silence on the issue must be deliberate. (*Campbell, supra,* 35 Cal.4th at p. 327.)

██ But according to the Supreme Court, "the express mention in one statute of a fundamental precondition of filing suit against an administrative agency does not abrogate that requirement in every statute that is silent on the matter." (*Campbell, supra,* 35 Cal.4th at p. 327.) ██ Or, in other words, " 'courts should not presume the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless that intention is made clearly to appear either by express declaration or by necessary implication.' " (*Id.* at p. 329.)

## II

Would-be plaintiffs ignore adverse administrative findings at their peril. An ever-burgeoning number of appellate cases reject civil actions predicated on conduct previously litigated in administrative proceedings. The issue presented in *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410] was "whether an individual who has been expelled or excluded from membership in an association after being afforded a quasi-judicial proceeding may bring an immediate tort action for damages or must first succeed in setting aside the association's decision in a separate mandamus action." (*Id.* at pp. 482–483.) A doctor at one of the petitioning hospitals requested a hearing after revocation of her staff privileges. She was provided a hearing, the judicial review committee upheld the revocation, and the hospital board of directors affirmed the committee's decision. (*Id.* at pp. 471–472.) She then brought a civil action against the hospital. (*Id.* at p. 469.) The Supreme Court, affirming the dismissal of the doctor's tort claim, held: "[W]e believe that so long as such a quasi-judicial decision is not set aside through appropriate review procedures the decision has the effect of establishing the propriety of the hospital's action. [Citation.] Accordingly, we conclude that plaintiff must first succeed in overturning the quasi-judicial action before pursuing her tort claim against defendants." (*Id.* at p. 484.)

The concept of exhaustion of judicial remedies is rooted in the principles embodied in collateral estoppel. The two are integrally intertwined. The question arises as to what effect administrative findings have in subsequent proceedings, including criminal and civil actions. In *People v. Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321], the Supreme Court held that if

an administrative agency, acting in a judicial capacity, resolved disputed factual issues in a proceeding in which the parties had an adequate opportunity to litigate the factual issues, the administrative findings had a collateral estoppel effect in subsequent litigation. (*Id.* at p. 479.)[3] Exhaustion of judicial remedies became a shorthand means of expressing the collateral estoppel effect and the policy of preserving the efficacy of administrative resolution of grievances.

■ To use the shorthand concept "failure to exhaust judicial remedies" can be misleading. A failure to exhaust judicial remedies suggests that the failure to bring a mandamus action precludes a subsequent civil action. Not so. An aggrieved employee is not necessarily compelled to petition for a writ of mandamus as a prerequisite to filing a civil action, but he or she must abide by the collateral estoppel effect of the unchallenged administrative findings. The confusion was properly dispelled in *Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235 [244 Cal.Rptr. 764] (*Knickerbocker*).

■ The court in *Knickerbocker* explained the difference between exhaustion of judicial remedies as a condition precedent to filing a civil action and collateral estoppel. "Unless the administrative decision is challenged, it binds the parties on the issues litigated and if those issues are fatal to a civil suit, the plaintiff cannot state a viable cause of action. 'Traditionally, collateral estoppel has been found to bar relitigation of an issue decided at a previous proceeding "if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding]." ' (*People* v. *Sims, supra*, 32 Cal.3d at p. 484, quoting *People* v. *Taylor* (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622], fn. omitted.) Thus, the defendants in this case are partially correct because some of plaintiff's causes of action involve issues previously litigated and decided adversely to him. Those causes of action are barred by his failure to seek review of the Commission's determination. But it is because he never overturned the finding of the Commission that there was justification for demotion as a consequence of his actions, and not because he failed to exhaust his administrative remedies. In short, plaintiff is bound by the Commission's determination and to the extent that his causes of action are inconsistent with that determination, they are fatally flawed. But plaintiff is not required to attack an administrative determination in which he acquiesces. He is no longer an aggrieved party and need not bring a superfluous writ proceeding just to lay a foundation for a later lawsuit. If he is content to

---

[3] The application of collateral estoppel in criminal proceedings is more problematic than we need to address here. (See *Gikas v. Zolin* (1993) 6 Cal.4th 841, 851–852 [25 Cal.Rptr.2d 500, 863 P.2d 745].)

accept the results of the review process furnished by the city, nothing compels him to seek writ relief. Exhaustion of judicial relief simply means that if he wishes to attack the administrative determination he must launch that assault in an administrative mandamus proceeding and not in a lawsuit for damages." (*Knickerbocker, supra,* 199 Cal.App.3d at pp. 243–244; see also *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 81 [99 Cal.Rptr.2d 316, 5 P.3d 874] (conc. opn. of Werdegar, J.).)

The recent amendment to the SPB's regulations relevant to whistleblower actions[4] does not alter the preclusive effect of the SPB findings. California Code of Regulations, title 2, section 56.5 now provides, in pertinent part: "(b) In those cases where the Executive Officer concludes that the allegations of retaliation were not proven by a preponderance of the evidence, the Executive Officer shall issue a Notice of Findings dismissing the complaint. The Notice of Findings shall notify the complainant that his or her administrative remedies have been exhausted and that the complainant may file a civil complaint with the superior court pursuant to Government Code Section 8547.8(c)."

Respondent court did not expressly hold that the revised regulation can be applied retroactively, but plaintiff argued the SPB's regulation amounts to a construction of the Whistleblower Act, and because the SPB is charged with the administration and interpretation of the statute, it is entitled to great weight; indeed, it should be upheld unless it is clearly erroneous or unauthorized. (*Cole v. City of Oakland Residential Rent Arbitration Bd.* (1992) 3 Cal.App.4th 693, 697–698 [4 Cal.Rptr.2d 593].) But the amended regulation, PERS contends, does not address the preclusive effect of the unchallenged administrative findings. PERS, requesting that we take judicial notice of the regulatory history of the regulation, observes the SPB concluded that "[t]he court, not the SPB, is the appropriate entity to determine what preclusive effect, if any, the Notice of Findings shall have in a subsequent civil action."[5] According to PERS, therefore, the amended regulation does not resolve the dispositive issue in this appeal, that is, whether plaintiff is collaterally estopped from bringing a civil action by failing to exhaust his judicial remedies.

We agree. If, as plaintiff would like, the statute and the amended regulation were divorced from a complicated body of case law on the binding effect of administrative findings in subsequent litigation, we could accept the plain

---

[4] On August 14, 2002, the SPB adopted regulations governing whistleblower complaints, effective immediately. Those regulations were substantially amended in March 2006. We will cite to the 2002 regulations as "former section ___" to distinguish them from current provisions of the California Code of Regulations.

[5] PERS's motion to take judicial notice, filed on November 17, 2006, is granted.

reading of the statute, bolstered by the regulation, and conclude a whistle-blower need not be encumbered by the administrative findings of the SPB in his civil action under the Whistleblower Act. We are not, however, at liberty to pretend the thorny problems posed by collateral estoppel do not exist. As a result, even if we were to accord great weight to the SPB's construction of section 8547.8's administrative exhaustion requirement, we conclude that the plain language of the statute simply does not resolve the more difficult dilemma posed by collateral estoppel.

Respondent court questioned whether the SPB was authorized to award damages under section 8547.8 or any other statute. In fact, section 19683, subdivisions (c) and (d) empowers the SPB to order "any appropriate relief," and the Supreme Court in *Campbell* found identical language to include the authorization to award damages. (*Campbell, supra,* 35 Cal.4th at p. 323.) Additionally, the court in *Campbell* held that the possibility that a whistle-blower may obtain more relief in civil court does not render the administrative remedy inadequate or obviate the requirement to exhaust administrative remedies prior to bringing a civil action. (*Ibid.*)

 Thus, it appears the investigation became a contested proceeding based on opposing evidentiary submissions. The executive officer served as a neutral adjudicator and was required to and did consider the parties' documentary evidence as well as arguments. "[S]o long as the agency is required by law to accept and consider evidence from interested parties before making its decision," the proceedings, even if entirely documentary, satisfy the hearing requirement of Code of Civil Procedure section 1094.5. (*Friends of the Old Trees v. Department of Forestry & Fire Protection* (1997) 52 Cal.App.4th 1383, 1391–1392 [61 Cal.Rptr.2d 297]; see *Mahdavi v. Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, 334 [136 Cal.Rptr. 421].)

Since, as we have concluded, the SPB's decision was made as the result of a proceeding in which evidence was required to be given and considered by the executive officer, its validity can be challenged by a petition for a writ of mandate. Here, plaintiff chose not to challenge the adverse findings by way of a petition for a writ. As a result, those findings cannot be relitigated in a whistleblower civil action and respondent court erred by overruling PERS's demurrer.

## III

Nor do we accept the notion that the Whistleblower Act provides an alternative remedy to his administrative remedies before the SPB. In the same way the California Fair Employment and Housing Act (FEHA; § 12900 et seq.)

allows a claimant to file a civil lawsuit without exhausting other administrative remedies, including proceedings before the SPB, whistleblowers contend they should be allowed to bypass writ proceedings and prosecute whistleblower actions. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074 [6 Cal.Rptr.3d 457, 79 P.3d 569] (*Schifando*); *State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422 [217 Cal.Rptr. 16, 703 P.2d 354] (*State Personnel Bd.*).) The analogy fails because of what the Legislature expressly stated in FEHA and did not state in the Whistleblower Act.

"[T]he purpose of the Civil Service Act is to ensure that appointments to state office are made not on the basis of patronage, but on the basis of merit, in order to preserve the economy and efficiency of state service; and that by contrast, the purpose of the FEHA is to provide effective remedies for the vindication of constitutionally recognized civil rights and to eliminate discriminatory practices that violate those rights. . . . [T]he FEHA creates areas of overlapping jurisdiction between the Board and other agencies." (*State Personnel Bd.*, *supra*, 39 Cal.3d at p. 439.) In enacting FEHA, the legislative intent is bold and blatant. "The Legislature intended the FEHA's administrative system 'to occupy the field of regulation of discrimination in employment and housing encompassed by the provisions of [the act], exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state . . . .' (§ 12993, subd. (c).)" (*Schifando*, *supra*, 31 Cal.4th at p. 1082.)

State employees have the right to bring a civil action based upon prohibited discriminatory conduct under FEHA after obtaining a "right to sue letter" or following the Fair Employment and Housing Commission's prosecution of an accusation. (*Schifando*, *supra*, 31 Cal.4th at pp. 1081–1082.) They are not required, however, to exhaust their remedies before the SPB and are entitled to pursue remedies in whichever forum they choose. (*Ruiz v. Department of Corrections* (2000) 77 Cal.App.4th 891, 897 [92 Cal.Rptr.2d 139] (*Ruiz*).) " 'The Legislature's intent was to give public employees the same tools in the battle against employment discrimination that are available to private employees. The FEHA was meant to supplement, not supplant or be supplanted by, existing antidiscrimination remedies, in order to give employees the maximum opportunity to vindicate their civil rights against discrimination . . . .' [Citation.]" (*Ibid.*) " '[The Legislature intended] to create new rights within the FEHA statutory scheme while leaving existing rights intact. . . .' (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 135 [32 Cal.Rptr.2d 275, 876 P.2d 1074] . . . .)" (*Ruiz*, *supra*, 77 Cal.App.4th at p. 898, citations omitted.)

The Whistleblower Act lacks the clarity of FEHA. As the Supreme Court reminded us in *Campbell*, " 'courts should not presume the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless that intention is made clearly to appear either by express declaration or by necessary implication.' " (*Campbell, supra*, 35 Cal.4th at p. 329.) Here the legislative intent is murky at best. The Legislature did not intend to provide aggrieved whistleblowers with a free pass to the courthouse without first filing a complaint with the SPB. (§ 8547.8.) But once the complaint is filed, did the Legislature intend to allow a civil action as an alternative remedy to the administrative proceedings? In other words, did the Legislature intend for any adverse findings by the SPB to be meaningless?

Because, as we explained at length above, long-established principles of law require courts to give efficacy to administrative decisions, we cannot presume the Legislature intended to upset venerable principles of collateral estoppel without saying so. FEHA plainly gives employees alternative and, perhaps, cumulative remedies. But the Whistleblower Act does not mimic FEHA. Rather, it requires the whistleblower to initiate administrative proceedings before the SPB, and having instigated those proceedings, there is nothing in the Whistleblower Act to exempt whistleblowers from abiding by entrenched principles of collateral estoppel. If the Legislature intends to allow whistleblowers to abort the administrative proceedings by filing a civil action without first overturning adverse findings through a writ of mandate, it will have to make its intentions explicit.

## IV

That is not to say we are oblivious to the burdens the Legislature appears to have placed on an injured whistleblower, on the one hand, that are at odds with the rights it has conferred under the Whistleblower Act, on the other hand. Both the SPB and the Legislature continue to attempt to tinker with the Whistleblower Act and the implementing regulations to clarify the whistleblower's rights and when he or she has exhausted the administrative remedies. (Sen. Bill No. 165 (2005–2006 Reg. Sess.) as introduced Feb. 8, 2005; Cal. Code Regs., tit. 2, § 56.5 (2006).) But we must apply the Whistleblower Act as it is, not the Whistleblower Act that might be written under either new legislation or new rules.

The administrative proceedings demonstrate infirmities similar to those described in *Schifando* and *Williams v. Housing Authority of Los Angeles* (2004) 121 Cal.App.4th 708 [17 Cal.Rptr.3d 374] (*Williams*). Pursuant to California Code of Regulations, title 2, former section 56.2, subdivision (c)(1)–(3), within 10 working days the SPB must notify the complaining party of its decision to either dismiss the complaint, refer the case for

investigation, or schedule the case for a hearing before an administrative law judge. The executive officer must conclude the investigation, including the questioning of witnesses, inspection of documents, and visit of state facilities, and issue a notice of findings within 60 days (unless the time is tolled or waived). (Cal. Code Regs., tit. 2, former § 56.5.) As a result, a complaining party has a very abbreviated time period in which to have his or her complaint resolved under the SPB procedures and might not have adequate time to prepare a case.

The court in *Williams* recognized that the disadvantages suffered by the complaining party during the administrative proceedings will compromise his or her chances of prevailing in mandamus. "Although [the administrative agency's] procedures provide a hearing and an opportunity to present evidence, . . . an aggrieved public employee might not have a chance to adequately prepare his or her case in the administrative process. This would further impact any chance of succeeding in the administrative proceedings. Thereafter, a court reviewing the matter in a mandamus action would give deference to the agency's or entity's decision. Even under the deferential independent judgment rule, the public employee is at a disadvantage in an administrative mandamus action because the trial court must afford the administrative agency's findings a strong presumption of correctness. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 816–817 [85 Cal.Rptr.2d 696, 977 P.2d 693].) If the reviewing court upheld the administrative findings, its determination on those issues would potentially have a preclusive effect (or collateral estoppel effect) on any subsequent FEHA action." (*Williams, supra,* 121 Cal.App.4th at pp. 727–728.)

*Williams,* like *Schifando* and *Ruiz,* involved FEHA claims, and all were predicated on the fundamental principle that the Legislature expressly intended to provide additional and expansive remedies to employees for discriminatory conduct. FEHA, unlike the Whistleblower Act, does not require the aggrieved employee to first file a complaint with the SPB or to exhaust any procedure other than FEHA. But the Whistleblower Act does compel the injured party to first file a complaint. Without exempting whistleblowers from pursuing the administrative proceedings it requires them to commence, we must apply traditional principles of collateral estoppel, and despite the distinct infirmities present in the administrative proceedings, we conclude that any adverse findings rendered by the SPB have a preclusive effect in subsequent civil litigation unless challenged by a writ of administrative mandamus.

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its order overruling PERS's demurrer to the whistleblower claim and to enter a new order sustaining the demurrer without leave to amend. Having served its purpose, the alternative writ is discharged, and the stay issued by this court is vacated upon the finality of this decision. PERS shall recover costs. (Cal. Rules of Court, rule 8.490(m)(1)(A).)

Scotland, P. J., and Cantil-Sakauye, J., concurred.