Filed 5/6/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANNETTE BULLOCK et al., Plaintiffs and Appellants, v. CITY OF ANTIOCH, Defendant and Respondent. | A161029 (Contra Costa County Super. Ct. No. MSC19-01331) |

Plaintiffs, retired employees of the City of Antioch (City), appeal from an order sustaining the City's demurrer to plaintiffs' second amended complaint without leave to amend.[1]  We review the decision de novo and find the trial court erred in sustaining the demurrer based upon collateral estoppel, also known as issue preclusion.[2]  We reverse and remand.

---

[1] The general rule is that an order sustaining a demurrer without leave to amend is not appealable, but a party may appeal from the entry of dismissal after such order.  (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527–528, fn. 1.)  Here, no judgment of dismissal is in the record.  However, " 'when the trial court has sustained a demurrer [without leave to amend] to all of the complaint's causes of action, appellate courts may deem the order to incorporate a judgment of dismissal, since all that is left to make the order appealable is the formality of the entry of a dismissal order or judgment.' [Citation.]"  (*Ibid.*)  That is the case here, and we deem the order on the demurrer to incorporate a judgment of dismissal and will review the order.  (*Ibid.*)

[2] The term "collateral estoppel" has been used to refer to "issue preclusion."  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–825.)  However, the Supreme Court in *DKN Holdings* indicated it would use the

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Second Amended Complaint*

Seventeen plaintiffs filed a second amended complaint (SAC) alleging they are retired employees of the City who receive retiree health benefits through CalPERS under the City's Medical After Retirement (MAR) plan. The plaintiffs retired at various times from 2002 to 2017. The SAC alleges each plaintiff's date of retirement, job title, and unit or bargaining unit. Five of the 17 plaintiffs had been members of Operating Engineers Local 3 (Local 3) prior to their retirement.

The memorandums of understanding (MOU) and other benefits documents applicable to each of the units or bargaining units state: " 'The City shall pay the PERS required Minimum Employer Contribution ("MEC") per month on behalf of each active *and retired employee* who participates in the City's health insurance plans.' " The City pays the MEC to CalPERS and then deducts the MEC amount from the retiree's premium reimbursement owed under the MAR plan. Plaintiffs allege the City's practice amounts to improper use of the plaintiffs' MAR benefits to pay the CalPERS required MEC, results in an improper reduction of plaintiffs' benefits, and violates Government Code section 22892[3] and the applicable MOU's and/or other plan documents.

---

term "issue preclusion" rather than "collateral estoppel." (*Ibid.*) We will do the same, except where the lower court or case law uses the term collateral estoppel.

[3] All statutory references are to the Government Code unless otherwise stated. Section 22892, which is part of the Public Employees' Medical and Hospital Care Act, sets the minimum employer contribution amount and states, in part: "The employer contribution shall be an equal amount for both employees and annuitants . . . ." (§ 22892, subd. (b)(1).)

Plaintiffs allege ongoing and continuing violations of the operative documents and section 22892.  The SAC attaches the plaintiffs' December 19, 2018 claim letters submitted to the City and the City's January 29, 2019 notices of untimely claim.  Plaintiffs allege they consider the City's notices to be a rejection of their claims, which continue to occur on a monthly basis.

Plaintiffs allege claims for declaratory relief, restitution/unjust enrichment, and negligence and breach of fiduciary duty.  They assert that contrary to the "express language of the operative and controlling City documents," the City misappropriates a portion of the plaintiffs' MAR benefit by deducting the MEC from the MAR reimbursement.

## II.    *City's Demurrer*

The City demurred to the SAC, arguing that the plaintiffs failed to state facts sufficient to constitute a cause of action because (1) the complaint is barred by issue preclusion based on a prior 2017 administrative proceeding between the City and Local 3, (2) the plaintiffs failed to allege exhaustion of their administrative remedies, and (3) the plaintiffs failed to comply with the claim presentation requirements under section 900 et seq.[4]  The City's issue preclusion argument was based on a union grievance proceeding filed by Local 3 in 2017, of which the City requested that the trial court take judicial notice.[5]

---

[4] The City previously demurred to the first amended complaint on the same grounds, and the trial court sustained the demurrer with leave to amend.

[5] The City also requested that the trial court take judicial notice of five MOU's covering the City's non-public safety employees, which refer to the applicable MAR plan explaining health benefits eligibility rules and coverage and which cap the total contribution the City pays toward health benefits for retirees.

## A.    2017 Local 3 Grievance

In 2017, Local 3 filed a grievance asserting that the City was violating section 12.1(B) of the MOU, which states: " 'The City *shall* pay the PERS required Minimum Employer Contribution (MEC) per month on behalf of each *active and retired employee* who participates in the City's health insurance plans.' "  Local 3 alleged it had recently learned that the City was paying the MEC "but also deducting it out of the retirees [*sic*] check only."  The city manager denied the grievance, explaining that the MAR plan capped the total contributions paid by the City toward retiree health benefits and the City correctly paid the MEC directly to CalPERS and the City correctly paid the difference between the MAR cap and the MEC directly to the retirees.

Local 3 appealed the denial of the grievance to the City's Board of Administrative Appeals (Board), which conducted a hearing on the issue.  The Board found that "the City is properly paying its Minimum Employer Contribution (MEC) under the Medical-After-Retirement cap for retirees and that the reasons given by Appellant [Local 3] to allocate the full cap amount to a retiree, plus have the City pay the MEC to CalPERS, is not what is reflected in the signed MOUs and MARs going back to 1993."  The Board's decision was referred to the city council for consideration and a final determination, and on November 14, 2017, the city council upheld the Board's determination.  Local 3 did not seek judicial review of the final decision.

## B.    City's Argument in Support of Demurrer

The City's demurrer argued that issue preclusion bars the current plaintiffs' claims because the identical issue was raised by Local 3 in the 2017 grievance proceeding, the issue was actually litigated with a final judgment on the merits, and the current plaintiffs are in privity with Local 3.  It also argued, alternatively, that the plaintiffs failed to exhaust the mandatory

4

grievance procedures in the MOU's and that plaintiffs failed to comply with the claims presentation requirements of section 945.4.

The plaintiffs' opposition argued that issue preclusion does not apply because the issues were not identical. The 2017 grievance proceeding did not consider the City's ongoing violation of section 22892. Plaintiffs also argued they were not parties to the 2017 grievance or in privity with Local 3. Although the plaintiffs acknowledged the Board hearing involved witness testimony under oath, admission of exhibits, and opening and closing argument, they argued that the City had a strong financial interest to rule against Local 3 and that the 2017 proceeding lacked impartiality of an independent tribunal.

## III.  *Order Sustaining Demurrer*

After a hearing on the City's demurrer, the trial court adopted its tentative ruling sustaining the demurrer without leave to amend based upon issue preclusion. The trial court found the issue alleged in the SAC to be identical to the issue decided in Local 3's 2017 grievance proceeding and rejected the plaintiffs' argument that the grievance proceeding did not address the issue of whether the City was violating section 22892. The trial court's ruling states: "The Court sees little difference between the issues. The gravamen of Local 3's dispute was the MEC was not being deducted from active members as it was being deducted from the retiree's [*sic*] checks. Government Code section 22892 provides that the employer's monthly contribution (MEC) shall be the same for both employees and annuitants and this section sets the minimum amount the employer pays. Clearly, Government Code § 22892 was at issue in the Local 3 grievance." The ruling further found that Local 3's MOU and the MOU's at issue in the SAC contain similar language based on the requirement set forth in section 22892, and

5

concluded: "Given the statutory bases for the MOUs, the Court sees little daylight between the issues raised in Local 3's grievance and the predominate issue in [the] SAC."

Regarding the privity requirement, the trial court's ruling states: "[T]he emphasis is not on a concept of identity of parties, but on the practical situation. The question is whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion." [Citation.]' (4 Cal.App.3d at p. 937.) (*Old Republic Ins. Co. v. Superior Court* (1998) 66 Cal.App.4th 128, 152.) ' "Due process requires that the nonparty have had an identity or community of interest with, and adequate representation by, the . . . party in the first action. [Citations.] The circumstances must also have been such that the nonparty should reasonably have expected to be bound by the prior adjudication . . ." [Citations.]' (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1070.) [¶] Collateral estoppel may be if due process requirements are satisfied. Here, the Court addressed the threshold requirements of identical issue and privity, finding their existence. As to the remaining requirements, the allegations in the SAC raised no real concerns as to whether the issues were actually litigated and whether the decision was final on the merits. 'Unless the administrative decision is challenged, it binds the parties on the issues litigated and if those issues are fatal to a civil suit, the plaintiff cannot state a viable cause of action.' (*California Public Employees' Retirement System v. Superior Court* (2008) 160 Cal.App.4th 174, 181)." (*Sic.*)

The trial court declined to sustain the demurrer on the City's alternative grounds that plaintiffs failed to exhaust administrative remedies stated in the MOU's and failed to comply with the claims presentation requirements of section 910 et seq.

6

## DISCUSSION

We review the trial court's ruling de novo and accept as true the allegations of the SAC and facts that may be properly judicially noticed. (*Lynch v. San Francisco Housing Authority* (1997) 55 Cal.App.4th 527, 531.)

## I.     *Issue Preclusion*

"Issue preclusion by collateral estoppel 'prevents "relitigation of issues argued and decided in prior proceedings." [Citation.]' [Citations.]  The doctrine 'rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent.  Public policy and the interest of litigants alike require that there be an end to litigation.' [Citations.]" (*Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82, 89–90 (*Rodgers*).)

The threshold requirements for issue preclusion to apply are: (1) the issue sought to be precluded from relitigation is identical to that decided in a prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)

Even when the threshold requirements are satisfied, courts may not apply issue preclusion if considerations of policy or fairness outweigh the doctrine's purpose in a particular case. (*Lucido v. Superior Court, supra,* 51 Cal.3d at p. 343.)  " 'In deciding whether the doctrine is applicable in a particular situation a court must balance the need to limit litigation against

7

the right of a fair adversary proceeding in which a party may fully present his case.' " (*People v. Vogel* (2007) 148 Cal.App.4th 131, 136.)

## A.    Threshold Requirements

We agree with the trial court's determination that the first four threshold requirements are met here.  The plaintiffs, however, argue that there is no identity of issues between the grievance proceeding and their complaint.  They claim the issue here is not based upon the language of the MOU's and instead is whether the City has violated section 22892, which sets the MEC and provides that it shall be the same for both employees and annuitants.  (§ 22892, subd. (b).)  However, they acknowledge that the SAC references the MOU language regarding payment of the MEC.  Further, it is undisputed that the City pays the MEC directly to CalPERS, as required by section 22892.  The SAC specifically alleges that the City's practice of deducting the MEC from the retirees' MAR reimbursement checks violates the section of the relevant MOU's or benefits plan documents, which state: " 'The City shall pay the PERS required Minimum Employer Contribution (MEC) per month on behalf of each active *and retired employee* who participates in the City's health insurance plans.' "  They seek a declaration of their rights under the referenced agreements and allege negligence and breach of fiduciary duty based upon the City's "contravention of the express language of the operative and controlling City documents . . . ."  As stated by the trial court, section 22892 provides the statutory basis for the relevant language in the MOU's.  The issue raised by plaintiffs, and previously by Local 3 in the 2017 grievance proceeding, is whether the City must pay retirees the full amount of their MAR benefit in addition to the MEC it pays

8

directly to CalPERS. We agree with the trial court that the SAC raises the same issue as the 2017 grievance proceeding.[6]

Plaintiffs argue the issue was not actually litigated in a proceeding with a judicial character because the City was the defendant and the ultimate adjudicator and it acted in its self-interest. Issue preclusion may be applied to an administrative proceeding if it has "judicial character." (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 944.) Indicia of judicial character include "a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision." (*Ibid.*)

The record includes documentation of the 2017 grievance proceeding, of which the City requested that the trial court take judicial notice, including detailed minutes of the September 27, 2017 Board hearing.[7] The minutes

---

[6] Plaintiffs also argue they should be granted leave to amend their complaint to allege that the City's deduction of the MEC from the plaintiffs' MAR payments violates Labor Code section 221. Because we reverse on the basis that issue preclusion does not apply on this record, we need not address whether plaintiffs may be able to state a claim under Labor Code section 221 or if such a claim would meaningfully differ from the issue decided in the grievance proceeding.

[7] The appellate record includes the records of the grievance proceeding and the relevant MOU's of which the City requested that the trial court take judicial notice when it filed its demurrer to the SAC. The record does not indicate that the plaintiffs objected to the City's request for judicial notice below or that they requested that the trial court take judicial notice of any other documents. For the first time on appeal, the plaintiffs request that this court take judicial notice of the Antioch City Council administrative record, which includes the transcript of the Board hearing and the parties' submissions to the Board. Absent exceptional circumstances, appellate

reflect that both parties were represented by counsel, they presented opening and closing arguments, and witnesses testified under oath and answered questions from the board members. Plaintiffs argue that the grievance proceeding lacked impartiality because the City was "both defendant and adjudicator . . . ." However, the plaintiffs provide no evidence of actual bias. Instead, they offer only conclusory statements that the city manager "had ample personal reasons" to deny the grievance and that the Board and the city council were improperly influenced by financial considerations. We find the plaintiffs' claim of bias to be speculative, and we reject the notion that the Board and the City can never be impartial where a ruling against the City

_____

courts generally do not take judicial notice of evidence not presented to the trial court. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) Plaintiffs offer no explanation for their failure to request judicial notice of these documents in the trial court. As discussed *ante*, the appellate record includes detailed minutes of the Board hearing recorded by the city clerk. We find these minutes provide a sufficient summary of the Board hearing and that we are able to resolve the issues raised on appeal based upon the documentation provided to the trial court. We decline to take judicial notice of the additional Antioch City Council administrative record, which plaintiffs could have presented, but did not present, to the trial court.

The plaintiffs also request that we take judicial notice of a law journal article and the legislative history of section 22892. Law review and journal articles are not a proper subject of judicial notice. (*County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1450.) Legislative history may be judicially noticed; however, we are not persuaded that the legislative history of section 22892 is necessary to our determination of the issues on appeal. Plaintiffs' argument regarding the importance of the legislative history of section 22892 is unclear. They reference over 2500 pages of legislative history and assert, "Nothing in . . . the available legislative history . . . suggests that the payment of the MEC can be delegated or assigned to the plan participants themselves . . . to be paid from their own private funds," and state the legislative history references employer contributions but contains "virtually no references to CBAs or MOUs." We deny the plaintiffs' requests for judicial notice in their entirety.

10

may result in financial detriment to the City. (*Basurto v. Imperial Irrigation Dist.* (2012) 211 Cal.App.4th 866, 885 ["statutory and case law long have recognized the ability of an agency to internally adjudicate employment and other matters, even where a result favorable to the other party may result in a financial gain for that party and a loss for the agency"].)

The plaintiffs argue that their claims for declaratory relief, breach of fiduciary duty and restitution were not necessarily decided in the grievance proceeding and that section 22892 was only "tangentially mentioned . . . ." As discussed *ante*, we find that although the plaintiffs frame the issue as involving statutory violations and breaches of fiduciary duties, the source of plaintiffs' rights to the MAR benefits are the MOU's or other benefits documents and that the grievance proceeding actually litigated and decided the interpretation of those documents.

Plaintiffs further argue the grievance proceeding decision was not final as to them because they were not parties to the proceeding and therefore lacked standing to pursue a writ of mandate. It is undisputed that only Local 3 and the City were parties to the prior proceeding. However, this does not mean that the prior proceeding did not result in a final decision after neither party sought review by a writ of administrative mandate. (*People v. Quarterman* (2012) 202 Cal.App.4th 1280, 1291 [decision is final for purposes of collateral estoppel when it is " 'free from direct attack' "].)

## B.    Privity

The more difficult question is whether plaintiffs were in privity with Local 3.[8] Privity refers to " ' " 'a mutual or successive relationship to the

---

[8] Plaintiffs argue that Local 3 could not represent them as a matter of law because labor unions do not have standing to represent retirees, and they cite *Chemical Workers v. Pittsburgh Glass* (1971) 404 U.S. 157 in support of this contention. *Pittsburgh Glass* held that retirees are not employees within

11

same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel. [Citations.]' " ' " (*Mooney v. Caspari* (2006) 138 Cal.App.4th 704, 718 (*Mooney*).) The privity requirement is a requirement of due process of law. (*Ibid.*)

" 'Privity is essentially a shorthand statement that collateral estoppel is to be applied in a given case [assuming the other requirements are satisfied]; there is no universally applicable definition of privity.' " (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 849.) The determination of privity requires a close examination of the circumstances of each case and depends upon the fairness of binding plaintiffs with the result obtained in the prior grievance proceeding in which they did not participate. (*Mooney, supra*, 138 Cal.App.4th at p. 719.) The issue is reviewed de novo because it " ' " 'involves the requisites and limits of due process . . . .' " ' " (*Ibid.*)

Here, plaintiffs include 12 individuals who were not ever members of Local 3 and five individuals who had been members of Local 3 prior to their

---

the meaning of the collective bargaining obligations of the National Labor Relations Act; nor are they bargaining unit members, and therefore the bargaining agent had no statutory duty to represent them in negotiations with an employer. (*Id.* at pp. 173, 176, 181, fn. 20.) The City correctly states in its respondent's brief that *Pittsburgh Glass* stands for the position that labor unions do not have a duty to represent retirees, but not that they are prohibited from doing so. (*Ibid.*) In plaintiffs' reply brief, they concede this point. In any event, we do not understand the City to be arguing that the plaintiffs were parties to the grievance but, rather, that Local 3 was in privity with the plaintiffs.

retirement.[9]  The City argues privity exists because Local 3 adequately represented the plaintiffs' interest and that the relationship between Local 3 and plaintiffs is " 'sufficiently close' " given that the MOU's applicable to all plaintiffs contain the same language.  It cites *Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329 for the position that privity exists between a labor union that pursues an issue through the grievance process and individual employees who later seek relief on the same claim in a civil action. We find *Kelly* to have limited application here because the primary issue addressed in *Kelly* was whether issue preclusion could be applied to a labor arbitration.  (*Id.* at pp. 1335–1338.)  The court specifically noted, "Appellants do not allege in this appeal that they lacked privity with the union . . . ." (*Id.* at p. 1338; see *DCM Partners v. Smith* (1991) 228 Cal.App.3d 729, 739 ["a case does not stand for a proposition neither discussed nor analyzed"].)  Nor does *Kelly* address the due process requirements recognized by other courts. (E.g., *Rodgers, supra*, 136 Cal.App.4th at p. 92.)

We question whether the relationship between Local 3 and the plaintiffs is sufficiently close to meet the privity requirement where none of the plaintiffs were current members of Local 3 at the time of the 2017 grievance proceeding and 12 of them never had any relationship with Local 3. We do not believe the similarity of the relevant language in the various MOU's, by itself, establishes a "sufficiently close" relationship to support a privity finding.  However, we do not need to resolve the privity issue because we find that based on the current record at the pleading stage, the due process requirements necessary to apply issue preclusion have not been met. (*Old Republic Ins. Co. v. Superior Court* (1998) 66 Cal.App.4th 128, 154 [issue

---

[9] The five plaintiffs who were former members of Local 3 all retired before Local 3 initiated the 2017 grievance proceeding.

preclusion may only be applied where due process requirements are satisfied], disapproved on other grounds in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 841, fn. 13.)

### C. Due Process Requirements

In examining whether issue preclusion applies in a particular case, the court must analyze due process requirements. Due process requires an identity of interest between the party to the prior proceeding and the party to be estopped, and adequate representation by the party to the prior proceeding, " ' "as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication." ' " (*Rodgers, supra*, 136 Cal.App.4th at p. 92.) " ' "The 'reasonable expectation' requirement is satisfied if the party to be estopped had a proprietary interest in and control of the prior action, or if the unsuccessful party in the first action might fairly be treated as acting in a representative capacity for the party to be estopped. [Citations.] Furthermore, due process requires that the party to be estopped must have had a fair opportunity to pursue his claim the first time." ' " (*Ibid.*)

The trial court's ruling references these due process requirements but does not separately analyze whether they were satisfied. Instead, the trial court concluded the threshold requirements, including privity, were met and therefore issue preclusion applied. We find the trial court's ruling erroneously sidestepped the important due process requirements.

While the plaintiffs may have had a financial interest in the outcome of the 2017 grievance proceeding,[10] nothing in the record suggests that any of

---

[10] The City states that had Local 3 succeeded on its claim, the remedy would have applied to plaintiffs and other retirees. However, it provides no legal or factual support for this statement. The City does not cite to any agreement between the City and the various unions and bargaining units

the plaintiffs had control over Local 3's grievance proceeding or even that they had notice of the proceeding. The City asserts that Local 3 pursued its claim "through all steps of the grievance process"; however, it did not seek judicial review of the adverse finding and the record is silent as to the reasoning behind Local 3's decision. Similarly, the record is silent as to whether plaintiffs had any ability to control or impact any aspect of the grievance proceeding, including the decision not to seek writ relief.

Arguably, Local 3 may have acted in a representative capacity for the five plaintiffs who were former members of Local 3 prior to retirement, but the City provides no authority for the notion that a union may act for retirees of different unions. Thus, Local 3 may not " ' "fairly be treated as acting in a representative capacity" ' " as to the 12 plaintiffs who were never members of Local 3. (*Rodgers, supra*, 136 Cal.App.4th at p. 92.)

Further, the five plaintiffs who were former members of Local 3 all retired before Local 3 filed its grievance in 2017. There is no evidence these five plaintiffs had any notice of the grievance proceeding by virtue of their former membership in Local 3, and therefore we find they did not have a fair opportunity to pursue their claim in the prior proceeding. Nothing in the record suggests any of the plaintiffs were aware of the 2017 grievance proceeding but opted not to become involved at their peril. Under these

---

providing that an administrative ruling regarding one union will apply to all other unions if the MOU's contain the same language. At oral argument, the City's counsel stated, without any citation to the record, that it was the City's "practice" to apply a ruling in a grievance proceeding to all affected retirees. It may be logical to assume that if there had been an administrative finding that Local 3's MOU required the City to pay the MEC amount in addition to the MAR benefit, the City would have applied the administrative ruling to all other MOU's containing the same language. Nonetheless, without any legal or factual support, this is only an assumption, and we find it is not sufficient to support a privity determination.

circumstances, we find the " ' " 'reasonable expectation' " ' " due process requirement has not been satisfied.  (*Rodgers, supra*, 136 Cal.App.4th at pp. 92–93 [reversing summary judgment based on collateral estoppel where the plaintiff likely had knowledge of prior litigation but no close relationship with plaintiffs in prior litigation and no control over the litigation such that he "cannot be charged with notice that he avoided the prior proceedings at his peril"].)

The City argues that plaintiffs had "a full opportunity to participate in the grievance" and that they could have joined in the grievance or spoken during public comment.  This argument presumes a key fact on which there is no evidence:  that plaintiffs, all of whom are City retirees, had contemporaneous knowledge of Local 3's 2017 grievance.

To summarize, we find that the current record provides no basis for concluding that the plaintiffs should reasonably have expected to be bound by the Local 3 grievance proceeding.  This is not to say that issue preclusion may never properly be applied in this case.  However, we find this record does not support the application of issue preclusion at the pleading stage.

## II.    *Exhaustion of Administrative Remedies*

The City contends the demurrer may be sustained on the alternative ground that the plaintiffs failed to exhaust their administrative remedies as required by the MOU's.  The trial court declined to sustain the demurrer on this ground.  The City's appellate brief points to a range of documents spanning over 150 pages in support of its statement that each MOU contains, or incorporates by reference, a mandatory grievance procedure and then cites to two pages of a section of a document entitled "Grievance Procedures and Appeals."  (All capitalization and underscoring omitted.)  Such block citations do not comply with California Rules of Court, rule 8.204(a)(1)(C), and

frustrate the court's ability to evaluate a party's position. (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 611.) We may disregard the City's contention on this point for a failure to comply with the appellate rules. However, even if we assume—without combing through the block citation to over 150 pages of the record—that the grievance procedures to which the City cites are, in fact, incorporated in each of the applicable MOU's, we find that the City has not demonstrated these procedures apply to the plaintiffs, who are all retirees.

The grievance procedure document to which the City cites makes repeated references to "employee," "employees," and "employee organization." It does not reference retirees. Similarly, none of the cases the City cites in support of its position that a party asserting a violation of a collective bargaining agreement must first exhaust mandatory grievance procedures contained in such agreements involve retirees. (See *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 317; *Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 494–495; *Johnson v. Hydraulic Research and Manufacturing Co.* (1977) 70 Cal.App.3d 675, 678–679.) In addition, the grievance procedure document states employees "shall have the right to use the grievance procedure" but not that the procedure is mandatory.

We conclude the City has not demonstrated that the plaintiffs' claims are barred because they failed to allege exhaustion of administrative grievance procedures. Accordingly, the trial court did not err when it declined to sustain the City's demurrer on this ground.

## III. *Claims Presentation*

The City also contends the demurrer may be sustained on the alternative ground that the plaintiffs did not comply with the claims

17

presentation requirements of Government Code section 945.4, which is applicable through Antioch Municipal Code, title 3, section 3-13.01(B).[11]  The City argued in the trial court that plaintiffs' claims are barred because plaintiffs did not present their claims to the City within one year of November 14, 2017, which is the date the city council upheld the Board's decision.  Plaintiffs presented their claims on December 19, 2018, and on January 29, 2019, the City denied them as untimely on the grounds that they were not presented within six months "after the event or occurrence . . . ."  Neither plaintiffs' claims nor the City's denials make any reference to the prior grievance proceeding.  The claims assert that "each month the City of Antioch requires [individual plaintiff] to pay for its PERS Minimum Employer Contribution ('MEC') for retiree health benefit coverage" and demands that the City reimburse the plaintiffs for the MEC payments for at least the last three years.  The SAC alleges that the plaintiffs have complied with the claim presentation requirement, that the claims are ongoing and occur on a monthly basis, and that the plaintiffs consider the City's notices of

---

[11] Government Code section 945.4 provides, subject to certain exceptions, that no suit for money or damages may be brought against a local public entity on a cause of action for which a claim is required to be presented until such claim has been presented and rejected by the public entity.  One of the exceptions provided in section 905, subdivision (f) is "[a]pplications or claims for money or benefits under any public retirement or pension system."  However, section 935 permits local public entities to enact ordinances applying the claim presentation requirements to claims for money or damages that are excepted by section 905.  Antioch Municipal Code, title 3, section 3-13.01(B) provides:  "All claims for money or damages against the city . . . not otherwise governed by the Government Claims Act, Cal. Gov't. Code §§ 900 et seq., or another state law . . . shall be presented within the time, and in the manner, prescribed by Cal. Gov't. Code Part 3 of Division 3.6 of Title 1 (commencing with § 900 thereof) for claims against a city . . . ."

untimely claims to be the equivalent of a rejection of each claim. The trial court declined to sustain the demurrer on this ground.

The City relies on *Tapia v. County of San Bernardino* (1994) 29 Cal.App.4th 375 to support its position that a failure to present a timely claim bars recovery of money damages. In *Tapia*, the plaintiff did not file any claim with the county prior to filing her lawsuit, and the court held, " 'Where compliance with the Tort Claims Act is required, the plaintiff must allege compliance or circumstances excusing compliance, or the complaint is subject to general demurrer.' " (*Id.* at pp. 380, 387.) The respondent's brief does not repeat its statement below that the plaintiffs were required to present their claims within one year of November 14, 2017. Instead, it simply asserts plaintiffs' claims were untimely, without reference to any accrual date.

As discussed *ante*, nothing in the record suggests the plaintiffs were ever made aware of the prior grievance proceeding. The City does not explain why November 14, 2017, should be considered the accrual date for plaintiffs' claims. Plaintiffs are not appealing the grievance proceeding decision. As we read the SAC, plaintiffs are asserting their own claims and alleging ongoing violations by the City. Based upon the current record, we find the trial court did not err in declining to sustain the demurrer based upon an alleged failure to comply with the claim presentation requirements of section 910 et seq.

### DISPOSITION

Treating the order sustaining the demurrer without leave to amend as a judgment of dismissal, we reverse and remand.

19

 

                                                  _____

                                                  Jackson, P. J.

WE CONCUR:

_____

Needham, J.

_____

Burns, J.

A161029/*Bullock v. City of Antioch*

A161029/Bullock v. City of Antioch

Trial Court:        Superior Court of Contra Costa County

Trial Judge:        Jill Fannin

Counsel:        Law Office of David Wolf and David A. Wolf for Plaintiffs and Appellants.

Jackson Lewis, Gina M. Roccanova, and Swaja Khanna for Defendant and Respondent.